## IV.  *CONCLUSION*

For the foregoing reasons, the judgment of the Honorable Paul D. Borman of the United States District Court for the Eastern District of Michigan is **AFFIRMED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0082P (6th Cir.)
File Name:  01a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GERARD JOSEPH PALAZZOLO,
    *Petitioner-Appellant,*

    *v.*                                            No. 99-1862

DAVID G. GORCYCA, Oakland
County Prosecutor,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-73457—Paul D. Borman, District Judge.

Argued:  October 31, 2000

Decided and Filed:  March 27, 2001

Before:  KEITH, BOGGS, and COLE, Circuit Judges.

———————————

### COUNSEL

**ARGUED:** Arthur Jay Weiss, LAW OFFICES OF ARTHUR JAY WEISS & ASSOCIATES, Farmington Hills, Michigan, for Appellant.   Marilyn Day, OAKLAND COUNTY PROSECUTOR'S OFFICE, Pontiac, Michigan, for Appellee. **ON BRIEF:**  Arthur Jay Weiss, LAW OFFICES OF ARTHUR JAY WEISS & ASSOCIATES, Farmington Hills,

Michigan, for Appellant.    Marilyn Day, OAKLAND COUNTY PROSECUTOR'S OFFICE, Pontiac, Michigan, for Appellee.

_____

**OPINION**

_____

DAMON J. KEITH, Circuit Judge.  Petitioner-Appellant Gerard Joseph Palazzolo ("Petitioner") was indicted in Michigan on a single charge of First-Degree Criminal Sexual Conduct ("CSC I").   The trial court granted Petitioner's motion to reduce the charge to Second-Degree Criminal Sexual Conduct ("CSC II"), and entered Petitioner's plea of *nolo contendere* over the state's objection.   Thereafter, the state successfully appealed the trial court's order reducing the charge, and the Michigan Court of Appeals remanded for reinstatement of the CSC I charge.   After exhausting state appeals, Petitioner sought relief, pursuant to 28 U.S.C. § 2254, in the district court below.   He appeals from the judgment denying his petition for writ of habeas corpus, raising the single issue of whether the state's appeal and subsequent prosecution of Petitioner on the CSC I charge are barred by the Double Jeopardy Clause.   For the reasons that follow, we affirm the judgment of the district court.

**I. BACKGROUND**

Petitioner was charged with CSC I[1] in Oakland County Circuit Court, arising from the sexual assault of his adopted daughter.   At the preliminary examination, his adopted daughter testified that Petitioner came into her room at night

_____

[1]Mich. Comp. Laws Ann. § 750.520b (West 2000).   Section 750.520b provides, in pertinent part, as follows:
>     A person is guilty of criminal sexual conduct in the first degree
>     if he or she engages in sexual penetration with another person
>     and if...[t]hat other person is under 13 years of age.
Mich. Comp. Laws Ann. § 750.520b(1)(a).

The facts of the case before us are relatively indistinguishable from the situation presented in *Johnson*.[7] Here, as in *Johnson*, the state objected to the acceptance of Petitioner's plea, and at all times wished to proceed with the CSC I charge.   Petitioner had notice that the state might appeal from the final judgment, yet he chose to go forward with his plea.   The reduction of the charge and acceptance of Petitioner's plea to CSC II was not an "implied acquittal" on the greater charge, nor was Petitioner exposed to conviction on the greater charge.   Moreover, the state has not had the "opportunity to marshal its evidence and resources more than once or hone...[the]  presentation of its case through a trial." *Johnson*, 467 U.S. at 501-02.   As noted by the *Johnson* Court, the state is entitled "to one full and fair opportunity to convict those who have violated its laws." *Id*. at 502.

Similarly, Petitioner has not been subjected to multiple punishments.   The trial court's reduction of the CSC I charge "did more than simply prevent the imposition of cumulative punishments; it halted completely the proceedings that ultimately would have led to a verdict of guilt or innocence" on the CSC I charge. *Johnson*, 467 U.S. at 499-500.   The jeopardy that attached to the CSC II charge does not bar the state from prosecuting Petitioner on the CSC I charge. Whether, in the event Petitioner is convicted of CSC I, he may be punished for the same conduct under both CSC I and II pursuant to state law is a matter we necessarily leave to the state courts to decide.

Accordingly, we conclude that neither the state's appeal nor its prosecution of Petitioner on the CSC I charge violate the Double Jeopardy Clause of the United States Constitution.

_____

[7]We reject Petitioner's contention that the principles articulated in *Johnson* are inapplicable because both CSC I and II were not charged in the information.  On the facts presented here, that is a distinction without a difference.   The state charged Petitioner with CSC I in the first information, and seeks to proceed with that charge.  This is simply not a situation, as Petitioner contends, where the state is attempting to charge separate offenses in successive prosecutions based on the same conduct.

manslaughter, aggravated robbery and grand theft. *See id*. at 495. The defendant subsequently pleaded guilty, over the state's objection, to the involuntary manslaughter and grand theft charges. *See id*. He then moved to dismiss the remaining charges, arguing that further prosecution on the two greater charges would violate his right against double jeopardy. *See id*. The trial court granted the defendant's motion, and the Ohio Court of Appeals and Ohio Supreme Court affirmed. *See id*. The United States Supreme Court reversed, holding that the Double Jeopardy Clause did not bar the state from continuing its prosecution on the two greater charges. *See id*. at 502.

The Court in *Johnson* first addressed the issue of successive prosecutions. The Court noted that the defendant was not "exposed to conviction" on the greater offenses, "nor ha[d] the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial." *Id*. The Court observed that the case presented "none of the governmental overreaching that double jeopardy is supposed to prevent," and concluded that "ending prosecution now would deny the [s]tate its right to one full and fair opportunity to convict those who have violated its laws." *Id*. at 502 (citing *Arizona v. Washington*, 434 U.S. 497, 509 (1978)).

Secondly, the Supreme Court addressed the issue of multiple punishments. *Id*. at 499-500. The Court concluded that the Double Jeopardy Clause's protection from multiple punishments for the same crime was not implicated by the state's prosecution of the defendant on remaining greater offenses after he had pleaded guilty to the lesser offenses. *See id*. The Court noted that, until the defendant was convicted of the greater offenses, he was not subjected to multiple punishments. *See id*. The Court observed that "the trial court, in the event of a guilty verdict on the more serious offenses, w[ould] have to confront the question of cumulative punishments as a matter of state law." *Id.*

and touched her vagina, over her underwear, with his fingers. Her testimony did not indicate any penetration. Also at the preliminary examination, the state introduced Petitioner's confession, in which Petitioner admitted to digitally penetrating the victim and her sister on unspecified occasions.

Petitioner was bound over by the trial court on the charge of CSC I. Petitioner moved to quash the information or reduce the charge arguing that, under Michigan's *corpus delicti* rule, the state could not use a criminal defendant's confession until the state had introduced non-confession evidence sufficient to establish every element of the crime charged. He argued that his confession could not be used to establish probable cause to believe Petitioner committed CSC I, since penetration is an element of CSC I.

The state trial court first noted that the *corpus delicti* rule requires that the state introduce evidence of the "occurrence of a specific injury," but need not establish every element of the crime charged. The court concluded, however, that penetration is the "specific injury" of CSC I, and thus is part of the *corpus delicti* of CSC I. Consequently, the trial court held that the state could not use Petitioner's confession to establish the *corpus delicti* of CSC I, and granted Petitioner's motion to reduce the charge to CSC II.[2]

On June 16, 1997, Petitioner pled *nolo contendere* to CSC II. Prior to the plea, the state prosecutor notified the trial court and Petitioner that the state might appeal the trial court's reduction of the charge from CSC I to CSC II. This apparently took Petitioner's counsel by surprise. He stated that he was not aware that there might be an appeal, and that he did not want his client to constructively consent to an

---

[2]Mich. Comp. Laws Ann. § 750.520c (West 2000). Section 750.520c provides, in pertinent part, as follows:

A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if...[t]hat other person is under 13 years of age.

Mich. Comp. Laws Ann. § 750.520c(1)(a).

appeal by entering a plea. In response, the state noted that it could take an appeal from the final judgment,[3] and did not feel that interlocutory appeal was appropriate. The state prosecutor stated that "[t]he [Petitioner] is not waiving any claims or rights by tendering a plea today." Petitioner's counsel stated that he would "take the Prosecutor's statement that we're not waiving anything by proceeding today[,]...including double jeopardy." The trial court noted the state's objection, and ordered entry of Petitioner's *nolo contendere* plea.

On July 23, 1997, the trial court sentenced Petitioner to one year incarceration, three years probation, with the balance of jail sentence suspended after six months so that Petitioner could enter the electronic monitoring program. Again at the sentencing hearing, the state gave notice that it might appeal the trial court's order reducing the charge, and noted its objection to the plea and sentence.

On September 8, 1997, the state filed a faulty claim of appeal, which was dismissed by the Michigan Court of Appeals.[4] On September 30, 1997, the state filed a delayed application for leave to appeal, which the Michigan Court of Appeals granted in an order dated December 10, 1997.

---

[3]Michigan Comp. Laws Ann. § 770.12(2)(e) (West 2000) provides: [T]he people of [Michigan] may take an appeal by leave in a criminal case, if the protection against double jeopardy under section 15 of article I of the state constitution of 1963 and amendment V of the constitution of the United States would not bar further proceedings against the defendant, from...[a] final order or judgment based upon a defendant's plea of guilty or nolo contendere.

[4]Under Michigan law, the state can appeal from a final judgment based on a *nolo contendere* plea by application for leave to appeal. *See* Mich. Comp. Laws Ann. § 770.3(1)(e) (West 2000). Because the Michigan Court of Appeals lacked jurisdiction to hear the state's claim of appeal, *see* Mich. Ct. R. 7.203(A)(1)(b) (West 2000), that court dismissed.

---

the state from completing its prosecution" on the CSC I charge. *Ohio v. Johnson*, 467 U.S. 493, 502 (1984).

Moreover, the charges in *Brown* were greater and lesser included offenses, and thus the "same offense" for double jeopardy purposes. This Court determines whether two crimes constitute the same offense for double jeopardy purposes by application of the same-element test originally set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1911). *See United States v. Dixon*, 509 U.S. 688, 696 (1992); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000). This test "inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696; *Blockburger*, 284 U.S. at 304. Under this test, CSC I and II are clearly separate offenses.[6] Therefore, Petitioner's conviction on the CSC II charge did not create a double jeopardy bar to reinstatement of the CSC I charge that was charged in the original indictment.

Further support for this conclusion is found in *Ohio v. Johnson*, in which the Supreme Court concluded that the Double Jeopardy Clause does not prohibit the state from prosecuting a defendant, who has pleaded guilty to some of the charges of an indictment, on the remaining charges. 467 U.S. 493, 501-02 (1984). The defendant in *Johnson* was indicted on one count each of murder, involuntary

---

[6]The crime of CSC I requires proof of "sexual penetration." Mich. Comp. Laws Ann. § 750.520b(1) (West 2000). Sexual penetration can be for any purpose. *See* Mich. Comp. Laws Ann. § 750.520a(l) (West 2000); *Lemons*, 562 N.W.2d at 456. CSC II requires the prosecutor to prove "sexual contact." Mich. Comp. Laws Ann. § 750.520c(1) (West 2000); *Lemons*, 562 N.W.2d at 456. Sexual contact is defined as touching that "can reasonably be construed as being for the purpose of sexual arousal or gratification." Mich. Comp. Laws Ann. § 750.520a(k) (West 2000); *accord Lemons*, 562 N.W.2d at 456. Thus, CSC I and II are separate offenses since CSC I requires proof of penetration, while CSC II requires proof of an intent to seek sexual arousal or gratification, and neither element is common to both degrees. *Cf. Lemons*, 562 N.W.2d at 456.

statements is largely irrelevant and distracting to the issue at hand.

Next, Petitioner contends that, because double jeopardy attached to the CSC II charge when he was sentenced for that offense, the state is barred from prosecuting him on the CSC I charge. Petitioner relies for this proposition on *Brown v. Ohio*, 432 U.S. 161 (1977). Petitioner's reliance, however, is misplaced.

In *Brown*, arising from his theft of an automobile, the state charged the defendant with joyriding, *i.e.*, taking or operating a vehicle without the owner's consent. 432 U.S. at 162. The defendant pleaded guilty, and was sentenced. *See id*. Thereafter, the defendant was indicted on charges of auto theft and joyriding based on the same theft. *See id*. at 162-63. The Supreme Court held that the second prosecution was barred by the Double Jeopardy Clause, since the defendant had previously been convicted of joyriding, which was a lesser included offense of auto theft. *See id*. at 169. The Court noted that the double jeopardy bar against successive prosecutions serves "a constitutional policy of finality for the defendant's benefit," and protects the defendant from prosecutorial overreaching. *Id*. at 161-62 (quoting *United States v. Jorn*, 400 U.S. 470, 479 (1971)).

The facts presented in *Brown* are clearly and immediately distinguishable from those presented here. Unlike the situation in *Brown*, the state did not seek to prosecute Petitioner on charges of CSC I and II in two separate, successive proceedings. Rather, the state charged Petitioner with CSC I only, and, indeed, never filed an information charging CSC II. The Supreme Court's decision in *Brown* reflects the need to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial overreaching. The state's actions here, however, do not give rise to these concerns. The "second" prosecution of Petitioner was the direct and foreseeable result of Petitioner's motion to reduce the charge, and he cannot now "use the Double Jeopardy Clause as a sword to prevent

On review, the Michigan Court of Appeals held that the trial court erred in finding that Petitioner's confession was inadmissible, and in quashing the CSC I charge. The court noted that the purpose of the *corpus delicti* rule was to prevent a defendant's confession from being used to convict him of a crime that never occurred. The court noted that the victim's testimony at the preliminary examination was sufficient to establish a specific injury, and therefore Petitioner's confession could be admitted to elevate the crime to a higher degree.

Additionally, the appellate court rejected Petitioner's argument that the appeal should be dismissed because further prosecution would violate the Double Jeopardy Clauses of Art. I, § 15 of the Michigan Constitution of 1963, and the Fifth Amendment of the United States Constitution. Citing Michigan precedent, the court held that when a plea and sentence occur on a reduced charge, and the basis for the reduction is later overturned on appeal, jeopardy does not attach. The appellate court reversed the trial court, remanded the case, and reinstated the original charge of CSC I. The trial court subsequently vacated Petitioner's conviction and sentence on the CSC II charge.[5]

The Petitioner filed an application for leave to appeal in the Michigan Supreme Court, again alleging a double jeopardy violation. On May 25, 1999, that court denied Petitioner's application. Petitioner filed his petition for writ of habeas corpus on July 12, 1999, raising a claim of double jeopardy. On July 26, 1999, the district court issued an order denying Petitioner's petition "for the reasons stated on the record." By the same order, the district court issued a Certificate of Appealability regarding the double jeopardy issue.

---

[5]Under Michigan law, once a plea is vacated, the prosecution may subsequently bring any charge that could have been brought prior to the plea. *See* Mich. Ct. R. 6.312 (West 2000) ("If a plea is withdrawn by the defendant or vacated by the trial court or an appellate court, the case may proceed to trial on any charges that had been brought or that could have been brought against the defendant if the plea had not been entered.").

## II. *STANDARD OF REVIEW*

This Court reviews *de novo* the legal conclusions involved in the district court's decision to deny the writ under § 2254, and reviews for clear error its findings of fact. *See Barker v. Yukins*, 199 F.3d 867, 870 (6th Cir. 1999).

Because Petitioner filed his habeas petition after 1994, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this case. The AEDPA amended 28 U.S.C. § 2254(d), which now provides, in relevant part:

> [A]n application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of the state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>     (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 1998).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362, ___, 120 S.Ct. 1495, 1498 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at ___, 120 S.Ct. at 1523. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at ___, 120 S.Ct. at 1521. A federal habeas court may not

claims or rights by tendering a plea today but I thought that he should know that it was a possibility.

Petitioner contends that he proffered his plea due to his assumption that the prosecutor was promising that he would be free from a second prosecution even if the state was successful in its appeal.

In response, the state contends that the prosecutor's statements simply conveyed that Petitioner was not giving up any rights by pleading to the CSC II charge, including double jeopardy protections. The state argues that the prosecutor was not assuring Petitioner that he would have a meritorious double jeopardy argument, but rather that he was not waiving a double jeopardy defense. The state notes that, if Petitioner is correct that the prosecutor's statements promised Petitioner a meritorious double jeopardy defense in the event of an appeal, it would have made no sense for the prosecution to give notice of, or for that matter to attempt, such an appeal.

Clearly, by tendering his guilty plea, Petitioner was not waiving his right to be free from multiple prosecutions and cumulative punishment in violation of double jeopardy principles. However, we disagree with Petitioner's assertion that the prosecutor's statements granted him something more than this basic assurance. Rather, we believe that the prosecutor's statements can be interpreted only as an assurance that Petitioner was not waiving any rights by proffering his plea to CSC II. Petitioner did not waive a double jeopardy defense, and that is why he has been able to assert that defense before the state courts, the court below, and here on appeal. Moreover, the statements made by the prosecutor at the plea hearing could not reasonably be interpreted to be assurances against prosecution on the CSC I charge if the state won on appeal. The Petitioner was given notice that the state might appeal the trial court's decision, and, in light of that notice, voluntarily chose to enter his plea to the reduced charge. The fact that Petitioner may have misinterpreted and unreasonably relied on the prosecutor's

deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the [state] is permitted to appeal from such a ruling of the trial court in favor of [Petitioner]." *Scott*, 437 U.S. at 98-99.

Particularly where, as here, the jury had not yet been empaneled and the proceedings had barely begun, the Double Jeopardy Clause is not offended by the government's appeal. The trial court dismissed the CSC I charge before jeopardy attached to that charge. It is well settled that "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975).

Petitioner contends that the holding in *Scott* is inapplicable here, due to certain assurances made to him at his plea hearing by the state prosecutor. Petitioner contends, as he did both before the state courts and district court below, that he reasonably interpreted and relied on the prosecutor's statements, and that he would not have gone forward with his plea had he known that the result of the state's appeal could be the reinstatement of the CSC I charge. Petitioner asserts that, in light of the prosecutor's assurances, he did not "voluntarily choose" to terminate prosecution of him on the CSC I charge.

At the plea hearing, the state prosecutor made the following remarks to the Petitioner and the state trial court:

I don't know that there will or won't be [an appeal]. I told [the Petitioner's attorney] that I have to review the case with my superiors. The [Petitioner], by tendering a plea, is not consenting to an appeal or anything. We still would have to seek leave to appeal in the Court of Appeals and it's at their discretion. I just wanted to state that on the record because I honestly don't know whether there will be one or won't but I thought that it would be proper to state that. I don't think it has any bearing on the [Petitioner]. The [Petitioner] is not waiving any

find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at ___, 120 S.Ct. 1522. "Rather, that application must also be unreasonable." *Id*.

Where the state court has failed to articulate its reasoning for its decision, "federal courts are obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (citations omitted). "That independent review, however, is not a full, *de novo*, review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id*.

### III.  *DISCUSSION*

Petitioner argues that the appeal taken by the state to the Michigan Court of Appeals violated his right against double jeopardy as guaranteed by the Fifth Amendment of the United States Constitution. He contends that the Double Jeopardy Clause stands as an absolute bar to the state's appeal from the final judgment of his conviction, and to the subsequent reinstatement of the CSC I charge.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The Double Jeopardy Clause protects against a second prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense. *See Ohio v. Johnson*, 467 U.S. 493, 498 (1984); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

The bar to retrial following acquittal or conviction ensures that the state does not "make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *United States v. Scott*, 437 U.S. 82, 87 (1978) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)). This bar is not absolute, however. It has long been settled that the general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction. *See Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). Moreover, where a defendant himself seeks to have his trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the government from his successful effort to do so does not offend the Double Jeopardy Clause. *See Scott*, 467 U.S. at 501-02.

In *United States v. Jenkins*, the Supreme Court held that a dismissal occurring at the stage of the proceeding after jeopardy had attached, but prior to the fact-finder's conclusion as to guilt or innocence, barred the state from appealing the dismissal, as the appeal would require further proceedings leading to a factual resolution of the issue of guilt or innocence. 420 U.S. 358, 369-70 (1975). The Supreme Court quickly overturned *Jenkins* in *United States v. Scott*, holding that when a defendant takes an active role in the trial court's dismissal of the indictment, the Double Jeopardy Clause does not preclude the state from appealing the dismissal. 437 U.S. 82, 101 (1978).

The defendant in *Scott* was charged in federal district court on a three-count indictment. 437 U.S. at 84. He successfully moved to have the first and second counts dismissed due to pre-indictment delay, and was subsequently acquitted of the third count. *See id*. The government appealed the trial court's order granting dismissal of the two counts of the

indictment to the Sixth Circuit Court of Appeals. *See id*. Relying on the Supreme Court's opinion in *Jenkins*, we dismissed the appeal, concluding that any further prosecution of the defendant on the two dismissed counts was barred by the Double Jeopardy Clause. *See United States v. Scott*, 544 F.2d 903, 903 (6th Cir. 1976). On appeal, the Supreme Court reversed, concluding that:

> the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant.... Rather, we conclude that the Double Jeopardy Clause, which guards against Governmental oppression, does not relieve a defendant from the consequences of his voluntary choice.

*Scott*, 437 U.S. at 99-100. The Supreme Court noted that the defendant "was neither acquitted nor convicted, because he himself undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him." *Id*. The Court concluded that the defendant "ha[d] not been 'deprived' of his valued right to go to the first jury; only the public ha[d] been deprived of its valued right to 'one complete opportunity to convict those who have violated its laws.'" *Id*. at 100 (quoting *Arizona v. Washington*, 434 U.S. 497, 509 (1975)).

Here, Petitioner moved to quash the information against him, asserting that the *corpus delicti* of CSC I was not established by independent evidence prior to the admission of his confession. Petitioner, like the defendant in *Scott*, voluntarily chose to terminate prosecution of the CSC I charge against him on a basis unrelated to factual guilt or innocence of the offense of which he was accused. Moreover, the state was quite willing to continue with its CSC I prosecution, but Petitioner chose to avoid trial. We believe that Supreme Court precedent makes clear that Petitioner, "by