OPINION
Defendant-appellant, Christopher Fuller, appeals his convictions in the Butler County Court of Common Pleas on three counts of rape, two counts of aggravated murder and one count of attempted rape.
On March 21, 2000, around 8:00 a.m., Mrs. Jessica Fuller dressed her two-year-old daughter, Randi Fuller. Mrs. Fuller stated Randi had no cuts or bruises at that time. Mrs. Fuller then left for work. Shortly after 2:00 p.m., appellant carried his daughter, Randi, from their house to the Sycamore Market in the city of Hamilton. Appellant carried Randi to the market because Randi was not breathing and appellant was asking for help.
One employee of the market began cardio-pulmonary resuscitation ("CPR") and another employee called 911. The employee administering CPR noticed Randi's hair and shirt were wet. Appellant told the employee Randi got wet when he had given her a glass of water to drink. The employee also noticed a pink liquid coming from Randi's mouth and nose. When he took Randi's clothes off to perform CPR he also noticed a large bruise on her chest as well as other bruises on her face and legs.
Paramedics and police officers arrived at the Sycamore Market and the life squad took Randi to the hospital. At the scene, appellant told an officer he gave his daughter a glass of water, went to the bathroom, and when he returned she was on the floor and not breathing. He told the officer he attempted mouth-to-mouth resuscitation but that it did not help. The officer offered to drive appellant to the hospital.
At the hospital, appellant agreed to go to the police station to give a statement. Appellant left the hospital with the officers at 3:00 p.m. At the station, appellant told the officers he had given Randi a large plastic cup of water. Appellant stated he then went upstairs to the bathroom for two minutes and returned to see Randi shaking and not breathing. Appellant stated Randi would often hold her breath and bite her tongue until she passed out when her mother would leave for work and that she appeared to be doing this again. Appellant stated he began mouth-to-mouth resuscitation when she began to turn blue. Appellant stated that when she did not respond, he took her to the Sycamore Market for help. After the statement was completed at 4:00 p.m., appellant returned to the hospital.
Randi died that afternoon at the hospital. That evening the investigating officers asked appellant to return to the station for another interview. The second interview began at 5:35 p.m. Appellant was read his Miranda rights. Appellant stated that he hurt Randi because "he pushed too hard." Appellant later told the officers he was home alone with his two daughters, when he took Randi upstairs leaving his daughter Faith downstairs. Once upstairs, appellant asked Randi to "love on daddy." Randi refused and appellant stated he got mad at Randi and hit her twice in the chest.
The officers asked appellant why Randi's rejection would anger him so much that he would hit her. Appellant responded it was because he was asking her for sex. Appellant then gave the police a third statement at 7:45 p.m. Appellant told the police that in May of 1999 he tried to put his penis into Randi's vagina but stopped because he could not maintain an erection. Appellant then stated he also tried to put his penis into Randi's vagina in February 2000 but again he could not maintain an erection so he put his penis into Randi's rectum. Appellant stated when he took Randi upstairs on March 21, 2000 he wanted to have sex with her again. Appellant stated he believed Randi refused because she knew what he wanted.
An autopsy revealed numerous bruises on Randi's face, chest, and back. The pathologist noted lacerations on top of her head, her brain was heavier than normal from swelling, there was a kidney hemorrhage, and petechial hemorrhages in her right eyelid. The pathologist stated the petechial hemorrhages were indicative of death by asphyxiation. Therefore, the pathologist concluded that Randi died of asphyxiation. However, an evaluation of Randi's genitalia revealed that there were no external injuries, lacerations, tears, bleeding, redness, or swelling.
Appellant was originally indicted on six counts: two counts of murder and one count of attempted rape, for events that occurred on March 21, 1999; and three counts of rape, for events that occurred during the months proceeding March 21, 1999. The trial court severed the earlier rape counts from the murder and attempted rape charges. Appellant pleaded no contest to three counts of rape and was tried by a jury and convicted of aggravated murder and attempted rape. The appeals for both cases have been consolidated into this appeal. Appellant appeals his convictions raising four assignments of error. Appellee, the state of Ohio, raises one cross-assignment of error.
Assignment of Error No. 1:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ALLOWED EVIDENCE REGARDING APPELLANT'S PRIOR `BAD ACTS.'"
Appellant argues that in order for other bad acts evidence to be admissible, there must be an inextricable link between the other acts and the offense in question, even if the enumerated exceptions in Evid.R. 404(B) apply. Appellant argues that when the probative value of a defendant's statement is outweighed by the prejudicial effect, the statement is not admissible into evidence. Furthermore, appellant argues not only was the evidence prejudicial to him but it was also misleading to the jury.
The state argues that statements are admissible where the statements "in a defendant's confession to the offense of aggravated murder, for which he was on trial, are related to his commission of other prior criminal acts against the same victim, and by which the defendant explained his state of mind in committing the murder." The state argues such evidence "is admissible under Evid.R. 404(B) and R.C. 2945.59 on the issue of the defendant's motive and intent in committing the offense." Furthermore, the state contends "in balancing its highly probative value, such evidence is not unfairly prejudicial and is admissible under Evid.R. 403(A)."
As with any other type of evidence, admission of "other acts" testimony must not only meet the prerequisites of Evid.R. 404(B), but it must also meet the prerequisites of Evid.R. 403(A) which requires the exclusion of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice." State v. Patterson, Butler App. No. CA 2001-01-011, 2002-Ohio-2065, ¶ 61. It has been held that only in rare cases is an "accused's own actions or language" unfairly prejudicial. State v. Geasley (1993), 85 Ohio App.3d 360, 373. The admission or exclusion of evidence, including other acts evidence, lies in the trial court's sound discretion. State v. Bey, 85 Ohio St.3d 487,489-490, 1999-Ohio-283.
An appellate court will not disturb a trial court's evidentiary ruling absent an abuse of discretion. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66; State v. Hymore (1967), 9 Ohio St.2d 122, 128. In order to find an abuse of discretion, the trial court's decision must be unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. For the following reasons, we determine that the trial court did not abuse that discretion by admitting the "other acts" evidence in this case.
Evid.R. 404(B) specifically states the rule of exclusion for evidence of "other crimes, wrongs, or acts." The rule provides, however, for an exception when the prosecution seeks to introduce evidence of other bad acts not to show the accused's character or his criminal propensity, but to establish circumstantially either an element of the crime or a material fact at issue. State v. Patterson, 2002-Ohio-2065 at ¶ 59. The Ohio Supreme Court has held that both R.C. 2945.59 and Evid.R. 404(B) are to be strictly construed against the state and conservatively applied by trial courts. State v. DeMarco (1987), 31 Ohio St.3d 191, 194. As the court pointed out in DeMarco, evidence of other acts is admissible "`not because it shows that the defendant is crime prone, or even that he has committed an offense similar to the one in question, but in spite of such facts.'" Id., quoting State v. Burson (1974), 38 Ohio St.2d 157,158.
Specifically, Evid.R. 404(B) allows the introduction of evidence of "other crimes, wrongs, or acts" when that evidence is used as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident." Id.; State v. Lowe,69 Ohio St.3d 527, 530, 1994-Ohio-345. This principle is further embodied in R.C. 2945.59, which provides: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant[,] which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." Id.
The threshold question in determining the admissibility of other-acts evidence under Evid.R. 404(B) is whether any of the matters of proof (motive, opportunity, scheme, etc.) are at issue in the case. State v.Griffin (2001), 142 Ohio App.3d 65, 72. If not, then the evidence is not admissible, no matter how telling, and regardless of whether an accused's past behavior constitutes a "behavioral fingerprint." State v. Knight
(1998), 131 Ohio App.3d 349, 353.
We conclude the trial court did not abuse its discretion when, under Evid.R. 404(B), it admitted the evidence of appellant's statement that he had engaged in sexual activity with Randi previously and that when he hit her in the chest it was his intent to engaging in sexual activity with her again and that is why he asked Randi to "love on daddy." Appellant surmised, "I think she knew what I wanted and that's why she said no." Appellant stated he hit Randi in the chest because he "got mad" and "just kind of snapped" when she said "no." Appellant's explanation of how his two-year-old daughter "knew what [he] wanted" when he asked her to "love on daddy" and his statements regarding prior sexual encounters relate directly to his state of mind and his intent at the time of the offenses.
Since evidence of other crimes is admissible, under Evid.R. 404(B), to establish motive or intent, the trial court properly permitted the introduction of evidence of appellant's statements about intending to engage in sexual activity with Randi when she was hit to establish appellant's state of mind when committing the murder. Any unfair prejudice was outweighed by the probative value of the statement. Evid.R. 403(A).
Consequently, the trial court's decision to admit appellant's statement was not unreasonable, arbitrary or unconscionable. Therefore, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FILED A JUDGMENT OF CONVICTION ENTRY AGAINST APPELLANT FOR ATTEMPTED RAPE AND FOR THE SPECIFICATIONS OF ATTEMPTED RAPE BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THOSE FINDINGS."
Appellant argues that in order to be convicted of an attempt, the defendant must take a substantial step towards completion of the crime, a step that is strongly corroborative of his purpose. When a defendant challenges the sufficiency of the evidence, the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78, quoting Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789.
In State v. Heinish (1990), 50 Ohio St.3d 231, 238-239, the Court held that attempted rape requires that the actor intend to compel the victim to submit to sexual conduct by force or threat and commit some act that "convincingly demonstrates" such intent. The conduct complained of need not be the last proximate act prior to the commission of the felony.State v. Farmer (1951), 156 Ohio St. 214, 216. Rather, the actor need only take a substantial step, or act strongly corroborative of the actor's criminal purpose. See State v. Smither (May 12, 2000), Lucas App. No. L-99-1110.
In State v. Smither, the Sixth District Court of Appeals found that "by stating he was going to have sex with her and by beginning to remove his pants and pushing [the victim] down on the bed, the jury could have reasonably found that appellant made a `substantial step' towards the commission of the crime." Smither at 3. Accordingly, the court held there was sufficient evidence presented which, if believed, would lead a rational trier of fact to find the elements of the attempted rape beyond a reasonable doubt. Id.
Likewise, in the case sub judice, there was sufficient evidence presented which, if believed, would lead a rational trier of fact to find the elements of the attempted rape beyond a reasonable doubt. There was sufficient evidence to demonstrate that appellant intend to compel Randi's submission to sexual conduct and that Randi was a person less than thirteen years of age.
Appellant admitted to the officers who took his statements that he took Randi upstairs in order to engage in sexual acts with her. Appellant further admitted that he was asking Randi to engage in sexual acts when he asked her to "love on" him. By taking Randi upstairs and separating her from her sister and by asking her to "love on" him, the jury could have reasonably found that appellant made a "substantial step" towards the commission of the crime. Appellant's words combined with his actions are sufficient to support a finding that he had taken a substantial step in the course of an attempted rape, and are corroborative of the criminal purpose. See Smither.
Considering the evidence in the light most favorable to the prosecution, a reasonable juror could have found the elements of the attempted rape beyond a reasonable doubt. Therefore, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FAILING TO GRANT A MISTRIAL AS A RESULT OF PROSECUTORIAL MISCONDUCT."
Appellant argues that it is prosecutorial misconduct and violative of due process for the state to tell the jury during final arguments that its witnesses testified truthfully and that "the defense is made up."
According to the Ohio Supreme Court in State v. Twyford,94 Ohio St.3d 340, 354-355, 2002-Ohio-894, "the test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940, 947. Thus, prosecutorial misconduct will not be grounds for reversal unless it so tainted the proceedings that it deprived the defendant of a fair trial. Id. at 221, 102 S.Ct. at 948.
The prosecutor is entitled to a certain degree of latitude in closing argument, and it is within the trial court's discretion to determine the propriety of a closing argument. State v. Benge, 75 Ohio St.3d 136, 141,1996-Ohio-227, certiorari denied, 519 U.S. 888, 117 S.Ct. 224. However, while a prosecutor may argue that certain evidence tends to make a witness more or less credible, he may not state his own belief as to whether a witness is telling the truth because to do so would invade the jury's responsibility to determine the weight to be given to witnesses' testimony. State v. Smith (1984), 14 Ohio St.3d 13, 14; State v.Carpenter (1996), 116 Ohio App.3d 615, 622. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. Benge, 75 Ohio St.3d at 141, 1996-Ohio-227.
During closing arguments, the state, in discussing the testimony of Dr. Douglas Mossman, stated: "What goes against all the evidence? Testimony from a psychiatrist that says [appellant] is troubled with socially complicated situations. Does that denigrate in any way any of the truthful, honest, abundant evidence the State provided to you? * * * [Appellant] worked, worked for years as a crew leader. * * * Crew leader means you're there, you interact with people, you tell them how to do things."
When discussing the testimony of the detectives, the state commented: "These Detectives testified truthfully and honestly to you about what happened in that room and there is no question that they did that, they testified that way." The state also said, "Detective [John] Nethers didn't lie to you about anything."
The state, while discussing the alternate theories of the defense stated, "You know, when there is no true defense, you might want you got to come up with something." Furthermore, the state said, "the defense of this case has changed so many times, what [appellant] said about it keeps changing."
The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. State v. Maurer (1984), 15 Ohio St.3d 239. While we do not condone the state's conduct of discussing the truthfulness of the testimony, considering the comments in light of the whole trial, it is not clear beyond a reasonable doubt that the jury would not have found appellant guilty absent the comments. Furthermore, the trial court instructed the jury that opening statements and closing arguments were not evidence. The court instructed the jury that each juror "must remember the evidence as you heard it, not as counsel told you the evidence came down. So your own remembrance of the evidence is what counts." Such curative instructions amply protected appellant's right to a fair trial. See State v. Turner (1993), 91 Ohio App.3d 153,157. Therefore, appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT RULED THAT HIS STATEMENTS TO THE POLICE WERE ADMISSIBLE INTO EVIDENCE."
Appellant argues the corpus delicti rule requires that there be some minimal evidence of the crime with which he is charged before his confession is admissible. Appellant argues there was no evidence, direct or circumstantial, that the three prior rapes occurred.
A confession is only secondary evidence, therefore, it is well-established that to render an extrajudicial confession admissible it is necessary to independently prove "that the crime occurred." State v.Nicely (1988), 39 Ohio St.3d 147, 154; State v. Van Hook (1988),39 Ohio St.3d 256, 262. The historical purpose of the corpus delicti rule was to prevent a defendant's confession from being used to convict him of a crime that never transpired. Palazzolo v. Gorcyca (C.A.6, 2001), 244 F.3d 512, 515. However, with the increased number of procedural safeguards for defendants in the criminal system, courts have found limited practical or social benefits in the corpus delicti rule. See State v. Edwards (1976), 49 Ohio St.2d 31, 35-36, death penalty vacated (1978), 438 U.S. 911, 98 S.Ct. 3147. Therefore, the quantum or weight of such outside or extraneous evidence "is not of itself to be equal to prove beyond a reasonable doubt, nor even enough to make it a prima facie case." State v. Haynes (1998), 130 Ohio App.3d 31, 34. It is sufficient if there is some evidence outside the confession that "tends to prove some material element of the crime charged." Id. Even circumstantial evidence that tends to prove the fact that a crime was committed is sufficient. State v. Maranda (1916), 94 Ohio St. 364, syllabus.
Appellant was charged for the three prior rapes under R.C.2907.02(A)(1)(b). R.C. 2907.02(A)(1)(b) states, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies: (b) [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." There was evidence offered that tended to prove some material elements of R.C. 2907.02(A)(1)(b). Evidence confirmed that Randi was under thirteen years of age and that Randi was not appellant's spouse.
Furthermore, evidence was presented that appellant and Mrs. Fuller were Randi's only caregivers. Mrs. Fuller and appellant split child care duties according to their work schedules. Mrs. Fuller testified that it was common for Randi to throw a tantrum whenever she would depart and leave Randi with appellant. Mrs. Fuller testified that the tantrums sometimes included Randi holding her breath until she turned blue. Mrs. Fuller stated, "if I left and [Randi] wasn't with me, she would scream." Mrs. Fuller stated that on March 21, 2000, Randi "was throwing a fit and I went to sneak out the back door."
Additionally, Dr. James Swinehart, the pathologist who examined Randi, noted that she had a dilated anus. Dr. Swinehart stated that while Randi's dilated anus did not conclusively indicate "that the child had been sexually molested," he could not rule out sexual abuse as a cause. When Dr. Swinehart was asked, "there is nothing that you observed that would suggest to you, hey, there was sexual abuse here, isn't that right?" Dr. Swinehart answered, "I testified there were no injuries to the female genitalia or anus. This does not rule out sexual abuse." Dr. Swinehart was also asked, "if there was part way penetration with a penis, would it have hit the hymen?" He answered, the hymen "might not have been lacerated by a very partial penetration." Dr. Swinehart further clarified this answer by stating, "what I'm contending, it is possible for someone to put a soft organ between the labia and perhaps just inside the labia minora without damaging that hymenal ring, because from his own statement he said he couldn't keep an erection."
In addition, Dr. Charles Smith, a forensic pediatric pathologist, noted that Randi "had a urinary tract infection in the days or weeks before she died." However, he stated that wasn't necessarily indicative of sexual contact because there are "lots of different causes of urinary tract infection."
Since the quantum or weight of such outside or extraneous evidence required to render an extrajudicial confession admissible is not as much as is required to make a prima facie case, the minimal requirements tending to show that the rapes had occurred has been met. Some independent evidence that the crime occurred, which tends to prove some material element of the prior rapes, was presented. Therefore, appellant's fourth assignment of error is overruled.
Cross-Assignment of Error No. 1:
 "THE TRIAL COURT ABUSED IT [SIC] DISCRETION IN GRANTING THE APPELLANT/CROSS-APPELLEE'S MOTION TO SEVER COUNTS FOUR, FIVE, AND SIX FROM COUNTS ONE, TWO AND THREE FOR SEPARATE TRIALS."
The state argues in its assignment of error that severance of the rape charges was not required. The state argues where there is a joinder pursuant to Crim.R. 8(A) and the offenses are of the same or similar character, constitute a common scheme or plan, or a course of criminal conduct by the defendant against the same victim, the evidence as to one crime is admissible in a trial of the other under Evid.R. 404(B). The state argues even if separate trials were granted, joinder is not prejudicial and therefore, a severance is not warranted pursuant to Crim.R. 14.
Crim.R. 14 states, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, * * * or provide such other relief as justice requires." The decision on the issue of severance is left to the discretion of the trial court. Braxton v. Maxwell (1965), 1 Ohio St.2d 134, 135. For an appellate court to reverse a trial court ruling granting severance, the trial court must have abused its discretion. See State v. Perod (1968),15 Ohio App.2d 115.
Appellant argued in his motion to sever counts 4, 5, and 6 of the indictment that prejudice would result if joinder were permitted. Furthermore, appellant argued Evid.R. 404(B) cannot negate the prejudice because evidence of counts 4, 5, and 6 would not be separate and distinct, since appellant's statement would be aggregated to each instance of rape, and seen as corroborative of one another. Appellant prevailed on his motion to sever because he was able to demonstrate that he was prejudiced by the charges being tried together. See State v.Mills (1992), 62 Ohio St.3d 357, 362.
The trial court found that the three counts of rape were improperly joined in the indictment and therefore counts 4, 5, and 6 were severed. The decision on severance is left to the discretion of the trial court.Maxwell at 135. The trial court's decision was not unreasonable, arbitrary or unconscionable. Therefore, the state's cross-assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.