Everett PASLEY, Defendant–Appellant,

v.

Kenny ROBINSON, Plaintiff–Appellee.

No. 01–1923.

United States Court of Appeals, Sixth Circuit.

Aug. 6, 2003.

* The Honorable Adrian G. Duplantier, United States District Judge of the Eastern District of Louisiana, sitting by designation.

Before BOGGS and GILMAN, Circuit Judges; and DOWD, District Judge.*

PER CURIAM.

Everett Pasley, the petitioner in this case, is a Michigan state prisoner who was convicted of felony murder and possession of a firearm during the commission of a felony. As a result of that conviction,

Pasley is serving a mandatory life sentence with no possibility of parole. He now appeals a district court order denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Pasley contends that his Sixth Amendment rights were violated during the course of his trial because of limitations put on his cross-examination of a prosecution witness and the admission into evidence of implicitly incriminating hearsay statements made by his co-defendant, who did not testify.[1] The district court held that although Pasley's Sixth Amendment confrontation rights had been violated, any error was harmless because there was strong evidence, untainted by Sixth Amendment error, that supported the jury's verdict. Pasley contends on appeal that the corroborative evidence of his guilt was insufficient for a conviction and that, therefore, the constitutional error perpetrated at trial was not harmless. For the reasons set out in this opinion, we affirm the district court's decision to deny Pasley's petition for a writ of habeas corpus.

## I

Everett Pasley and his co-defendant, Darrin Higgins, were tried before separate juries in a single trial for the shooting of Troy Denard, which took place at approximately 7:15 p.m. on March 14, 1986. On September 30, 1986, a Michigan jury found Pasley guilty of first degree murder and possession of a firearm during the commission of a felony. Higgins was acquitted of the murder charge and convicted of the felony firearm charge.

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. Everett Pasley and Darrin Higgins were tried before separate juries in a single trial.

Higgins *did* testify before his own jury, but not in front of Pasley's, and thus for purposes of Pasley's appeal, Higgins is a non-testifying co-defendant.

The evidence at trial established that Earline Gibson, a neighbor who lived around the corner from Higgins, saw the deceased, Troy Denard, get into a small blue car driven by Higgins on the night Denard was killed. Gibson also testified that she recognized Pasley as a man she had seen with Higgins in the past, and saw him in the front passenger seat of the blue car. Pasley then got out of the car to get into the back seat, so that Denard could take the front passenger seat. While Pasley was shifting from the front to the back seat, Gibson spotted what she thought was the handle of a gun in Pasley's coat.

Kenneth Jones, an acquaintance of Denard's who was on the street talking to Denard on the night he was killed, also testified that Denard got into a blue car driven by Higgins that evening. Jones testified that there was someone else in the car, but he was unable to identify the other person. A short time later, Jones saw Denard running along the street, yelling for an ambulance because he'd been shot. When Jones asked Denard who shot him, Denard replied that it was "Darrin Higgins and that guy."

Randy Holman, the first officer on the scene, testified that when he got to Denard, he was still conscious and talking despite the fact that he had been shot twice in the head and once in the left shoulder area. Denard told Holman that he had been shot by Higgins and by the "occupant in the back seat." Denard gave a description of the other occupant of the car to Holman,[1] but Denard didn't know the other man's name. Later that evening in the hospital, Denard told his aunt, Paulette Moore, that "Darrin Higgins and Darrin Higgins' friend shot him." Denard died seven days later.

Medical examiner Marilee Frazier, who performed the autopsy on Denard, testified that there were three bullets shot into the deceased. Two of the bullets entered through the back of the head, and one through the left shoulder. Although one would imagine that each of these shots had to have been fired at close range if Denard was shot by Pasley and Higgins while inside the car, at the time of the autopsy there was no evidence of close-range firing, such as soot or gunpowder on Denard's skin. Frazier explained that the absence of such evidence suggested that Denard was shot from a distance of more than eighteen inches away. However, the prosecutor pointed out in his rebuttal argument at trial that since Denard did not die until seven days after the shooting and had undergone surgery in the interim, any evidence of close-range firing might have been removed by the time of his autopsy.

Pasley testified on his own behalf, denying any involvement in the shooting. According to his testimony. Pasley was in Ann Arbor, applying for a job with the Police Department the day that Denard was shot. He returned to Detroit at around 5:30 or 6:00 p.m. with his girlfriend, Sandra St. Clair, who is also Darrin Higgins's sister. Pasley testified that he slept at the Higgins family home, located in the neighborhood where Denard was shot, until 8:00 p.m., when he received a call from Higgins. Pasley stated that he drove his car to meet Higgins at a motel. Pasley registered a room in his name and then left the motel and returned to the Higgins home where St. Clair was waiting.

St. Clair supported Pasley's testimony up to a point. St. Clair testified that she and Pasley had in fact traveled to Ann

---

1. Holman was not asked by either side about the description Higgins gave of "the other man."

Arbor the day of the shooting, so that he could apply for a job with the police department there, and that they returned that evening to Detroit and took a nap at her family's home. However, St. Clair testified that Pasley left the house at about 7:30 or 7:45 p.m. that night and that when she looked outside after he left, her car, a blue Camaro, was gone, while his car remained at the house. St. Clair stated that sometime before 10:00 p.m., Pasley returned and drove her to the Crown Motel, where she retrieved her blue Camaro.

Carlton O'Neal, a man who lived with Higgins and his family, also testified against Pasley. O'Neal stated that a few days after the shooting, while at Higgins's house, he overheard Pasley say that if Higgins had not helped Denard get out of the car. Pasley would have killed Denard in the car. On cross-examination, defense counsel twice tried to question O'Neal about whether he was on probation. Each time, the prosecution's objection to questions about O'Neal's probationary status were sustained. Defense counsel was limited to eliciting an admission from O'Neal that he had been convicted of carrying a gun the year before.

Finally, the defense agreed to stipulate that if Sgt. Richard McCarty were called as a witness, he would testify that he arrested Pasley and that "the man he arrested fit the description given by Darrin Higgins of Mr. Pasley."

After deliberating for approximately two hours, the jury convicted Pasley, who soon after filed a direct appeal. The Michigan Court of Appeals affirmed Pasley's convictions in an unpublished opinion and Pasley did not file for leave to appeal to the Michigan Supreme Court. Pasley later filed a motion for relief from judgment in the trial court raising six separate claims, including the two Sixth Amendment challenges at issue in this appeal. The trial court denied the motion, stating that "all of the issues raised by this Motion were considered on appeal." *People v. Pasley*, Recorder's Court for the City of Detroit Case No. 86–003155–02 (March 5, 1996). The Michigan Court of Appeals and the Michigan Supreme Court summarily denied Pasley's application for leave to appeal, stating only that he had failed "to meet the burden of establishing entitlements to relief under M.C.R. 6.508(D)". In 1999, Pasley filed this petition for a writ of habeas corpus with the district court, presenting the same six claims raised in his motion for relief from judgment in the state courts.

The district court found that Pasley's Sixth Amendment right of confrontation was violated twice during the course of the trial. First, as a result of the admission of Sgt. McCarty's testimony, which included the hearsay statements describing Pasley made by Pasley's co-defendant, who had not testified in front of Pasley's jury. Second, as a result of the trial judge's refusal to allow Pasley to question O'Neal about his probationary status. The district court held, however, that these constitutional errors were harmless since the jury could have found Pasley guilty on the basis of other evidence that was untainted, independent of the evidence that was improperly admitted at trial. The district court did not find any further constitutional error and denied Pasley's writ of habeas corpus.

Pasley now appeals the district court's denial of his petition for a writ of habeas corpus and limits his claims to the two Sixth Amendment violations discussed. Pasley argues that the district court was correct in finding violations, but incorrect in denying his writ on the basis of harmless error.

## II

We review *de novo* the legal conclusions of the district court in its disposition of a

habeas corpus petition pursuant to 28 U.S.C. § 2254. *Palazzolo v. Gorcyca,* 244 F.3d 512, 515 (6th Cir.2001). Because this habeas petition was filed after April 24, 1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Pursuant to AEDPA, habeas corpus relief is unavailable with respect to any claim adjudicated on the merits in state court unless the adjudication:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). In addition, for purposes of habeas review of state court decisions, findings of facts made by a state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1).

The facts in this case are undisputed, and thus Pasley is only entitled to habeas relief if he can meet one of the two bases for relief provided in § 2254(d)(1). In *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court interpreted the language of § 2254(d)(1), and held that a decision by a state court is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth" by the Supreme Court or if it "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision, and nevertheless arrives at a different result. The Court also discussed what qualifies as an "unreasonable application" of law according to

§ 2254(d)(1), and held that a state court's decision may not be overturned simply because this court believes that the state court applied Supreme Court precedent incorrectly. *Id.* at 411. *See also Bell v. Cone,* 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Instead, the state court's application of Supreme Court precedent must be objectively unreasonable. *Woodford v. Visciotti,* 537 U.S. 19, 24–25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002).

## III

### *Sixth Amendment Violations*

Pasley argues that the introduction of certain hearsay statements made by his co-defendant, Darren Higgins, admitted through Sergeant McCarty's testimony, violated clearly established Supreme Court precedent as articulated in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), even though stipulated to by the defense counsel at trial. Pasley additionally contends that the trial judge's refusal to allow him to cross-examine Carlton O'Neal, the prosecution's witness, about his probationary status in order to reveal bias, violated clearly established Supreme Court precedent as articulated in *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The government argues that even if the trial judge's determinations resulted in a violation of clearly established federal law, any resulting error was harmless.

It is settled that Confrontation Clause violations are subject to harmless error review. *See Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Bulls v. Jones,* 274 F.3d 329, 334 (6th Cir.2001). However, we use a different standard when reviewing state court decisions for harmless error in a collateral appeal than we do on direct appeal. In applying the harmless error analysis on

habeas review for cases governed by AED-PA, we apply the harmless error standard set out in *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding that the *Chapman* harmless error standard, which requires the court to ask if absent the improperly admitted evidence, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty, was not appropriate when reviewing habeas petitions, and replacing it with the lesser harmless-error standard articulated in *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *Mitzel v. Tate*, 267 F.3d 524, 534 (6th Cir.2001). Furthermore, we apply this standard even when the "federal habeas court is the first to review for harmless error," as in this case. *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999).

Under the *Brecht* standard, a habeas petitioner must establish that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776). To meet this standard there must be more than a "reasonable possibility" that the error contributed to the jury's verdict. *Ibid.* Ultimately, "we must ask whether the error had 'a harmful or injurious effect on the fundamental fairness of the trial.'" *Mitzel*, 267 F.3d at 534 (quoting *Gilliam*, 179 F.3d at 995).

Having carefully considered the record on appeal, the parties' briefs, and the applicable law, we are not persuaded that the district court erred in holding that any errors present in Pasley's case did not have a harmful or injurious effect on the fundamental fairness of his trial. The district court opinion ably articulated the existence of strong evidence, untainted by the Sixth Amendment violations at trial, that supports the jury's verdict. Gibson

testified that Denard got into a car with Higgins and Pasley, thereby supplying the critical identification of Pasley as the other occupant of the car. Jones testified that Denard got into a car that evening with Higgins, who was driving, and another man, although Jones couldn't identify the other man. Jones essentially corroborated Gibson's testimony, apart from her identification of Pasley. And finally, Denard told Jones, Holman (the first officer on the scene), and his aunt, that Darrin Higgins and Higgins's friend shot him not long after Denard got into the car with Higgins and Pasley.

Gibson's identification of Pasley, rather than Higgins's description of Pasley, is the crucial evidence, since Higgins could have had an ulterior motive for giving a description of Pasley when being interrogated by the police, even if he gave no further information. As a result, it is likely that the jury relied on Gibson's testimony, rather than Sgt. McCarty's testimony as to Higgins's description, in their deliberations. Furthermore, with respect to O'Neal's testimony, although the trial court's exclusion of his probationary status was erroneous under *Alaska v. Davis*, we conclude that the trial error in this case did not have a substantial and injurious effect or influence on the jury's verdict in light of other evidence presented.

Pasley argues on appeal that Gibson's and Jones's testimony was highly unreliable, and could not, therefore, be counted upon to uphold the jury's verdict on a theory of harmless error. Furthermore, Pasley contends that without O'Neal's testimony, there was no evidence of first-degree murder, which requires a showing of either premeditation or felony murder. Both arguments fail.

*A. Gibson's Testimony:*

Earline Gibson gave a statement to the police approximately one month after De-

nard's shooting, and at that time she identified Pasley from a series of photographs the officers had brought with them. In her statement to the police. Gibson recalled that Denard had driven a blue car to the street where everyone was standing around on March 14, and had gotten into a brown car with Higgins and Pasley. Three days after making her statement. Gibson called the police and told them she had just had a dream about the events of that night and as a result, she remembered that Denard had actually driven up in a brown car, instead of a blue car, and that Higgins had been driving a blue car— not a brown one. At trial, Gibson's testimony was consistent with her post-dream revelation.

Gibson's prior inconsistent statements to the police were brought out in Gibson's testimony at trial, and while it is apparent that Gibson was not an ideal witness, her inconsistency on what color car was driven by whom is of minimal importance. In the first place, Jones and Shannon Guinn. another person who was standing around on the street that night, testified that Denard got into a blue car, thereby corroborating Gibson's testimony at trial regarding the color of the car. Second, the color of the car was not as important as Gibson's testimony identifying Pasley, of which she was confident throughout. Furthermore, Gibson's identification was all the more reliable because of her prior acquaintance with Pasley. Although any confusion in Gibson's testimony might weaken her overall credibility, she was firm with regard to her identification of Pasley. Given these facts, Gibson's testimony is not so unreliable as to weaken the evidence upon which the district court and we rely in determining that the errors committed were in fact harmless.

### B. Jones's Testimony:

Jones testified to the fact that on March 23, 1986, nine days after Denard was shot, he was visited by the police. Officer Stawiasz presented Jones with a photo array, in an attempt to identify the person who drove away with Higgins and Denard in the car. Pasley was the fifth photo in the array. Jones testified to the fact that he told the officers that he had not gotten a good look at the third man in the car, but thought it might be the third or fourth photo in the lineup. Jones did not select Pasley out of the photographs presented to him.

At trial, Jones again stated that he could not identify the person who was in the car with Higgins and Denard. While we absolutely agree that Jones's testimony cannot be relied upon for identifying Pasley as the third person in the car and the likely shooter of Denard, this is unnecessary, given Gibson's testimony. Jones's testimony corroborating Gibson's story that Denard got into a blue car driven by Higgins with another person riding as a passenger is all that is needed, and with regard to these facts, Jones remained consistent.

### C. Premeditation

To convict Pasley of first-degree murder, the prosecution had to prove that Pasley had either committed murder "by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing"; or "in the perpetration of, or attempt to perpetrate, ... robbery ..." MCLA 750.316. The prosecution argued at trial that Pasley shot Denard in the course of a drug deal that turned into an attempted armed robbery and murder. Pasley argued that he was not the third man in the car with Higgins and Denard, and was innocent. The jury found Pasley guilty of felony murder and felony firearm. Pasley now contends that without witness O'Neal's testimony, there was no evidence of first-degree murder, which requires a showing of either premeditation or felony murder.

Denard stated to both Jones and to his aunt that Higgins and his friend had tried to rob him. The jury apparently believed them and convicted Pasley. With the clear evidence of felony murder. it is unnecessary to demonstrate premeditation on Pasley's part. Thus O'Neal's testimony regarding Pasley's intent is not necessary to support Pasley's conviction.

## IV

For the reasons given above, we AFFIRM the district court's decision to deny Pasley's petition for a writ of habeas corpus.