OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellant, v. Lowe, Appellee.
[Cite as State v. Lowe (1994), -- Ohio St. 3d ---.]
Criminal law -- Aggravated murder -- Evidence -- Other-acts
     evidence to prove identity through a certain modus
     operandi admissible, when -- Standard of appellate review
     in midtrial appeals.
1.   To be admissible to prove identity through a certain
          modus operandi, other-acts evidence must be related to
          and share common features with the crime in question.
2.   The standard of appellate review in midtrial appeals
          is the same as that in post-trial appeals.
     (No. 93-493 -- Submitted December 8, 1993 -- Decided July
6, 1994.)
     Appeal from the Court of Appeals for Logan County, No.
8-92-36.
     Late in the evening of July 5, 1986, Phyllis Mullet and
Belle Center Marshal, Murray Griffin, were killed in Mullet's
Belle Center home.  Mullet died of stab wounds; her body was
found partially clad, her feet bound with rope and her hands
bound with a cloth.  Marshal Griffin was shot to death --
possibly with his own revolver, which was missing from the
crime scene -- as he responded to a call to Mullet's home.
More than four years later, defendant-appellee Terry Lowe was
indicted on two counts of aggravated murder.  This
interlocutory appeal was taken to determine the admissibility
of certain other-acts evidence.
     Central to the state's case are what it asserts are
interrelated pieces of evidence.  The linchpin piece of
evidence is a handwritten document known as the power list.
The power list was found in Lowe's trash during a search of his
home on July 12, 1986.  The state characterizes the document as
a written plan of deviant sexual activity.  The right side of
the document contains a list of names, with the names bracketed
into several groupings, presumably by families.  The name
"Tootie," Mullet's nickname, as well as the names of Mullet's
two children, appears on the list.  The list also contains the
names of two other female children whom the state seeks to have
testify against Lowe.

The prosecutor describes the power list as "a memorandum of the plan of sexual control the defendant wished to complete in a year's time." To prove that theory, the state seeks to introduce certain other-acts evidence, specifically the testimony of Mullet's daughter, Mandy Mullet, Mandy Orders, and Amy Mathews, who were eleven, eight and eight years of age, respectively, at the time of the murders. The state argues that the sexual nature of Lowe's activities with those girls indicates that the power list was not just fantasy put to paper, but was instead a plan of activities which Lowe had begun to embark upon. Lowe's plan to have sex with Mullet, the state argues, went awry, resulting in the murders.

Mandy Orders testified about the children's activities with Lowe prior to trial. For the most part, Lowe's most questionable activities were with the two younger girls, Mandy Orders and Amy Mathews. Mandy Orders began visiting Lowe with her friend Amy Mathews in the late spring of 1986, prior to the murders. Lowe knew the girls' parents, who permitted the girls to visit him. Mandy Mullet would also occasionally visit Lowe's home.

When visiting Lowe the girls would play among themselves or with Lowe, occasionally shop at the drugstore across the street from Lowe's home, and once travelled with Lowe to a K-Mart in Lima or Kenton.. Lowe and the girls played several different games, including the "rug game," in which Lowe would wrap the children up in a rug, tie a rope on one end and drag them around the floor. In a variation on hide-and-seek, a person was tied and had to get loose in order to find the other players. Lowe would untie the girls if they were unable to do so themselves.

Some of Lowe's other activities with the girls were of an overtly sexual nature. On at least one occasion he showed Orders and Mathews X-rated videotapes, and explained to the girls what was happening in the films. At times while watching the videos, Lowe's hands would be down his pants. On other occasions, Lowe would walk through his house in a bikini swimsuit or bikini underwear, and would sometimes have his hands down his pants. Lowe also showed Mathews and Orders Playboy magazines, and allowed the girls to make audiotapes of themselves uttering sexual language. There has been no testimony that Lowe ever touched the girls in a manner which constituted sexual contact.

The murder scene contained no direct evidence which indicated that the killings were sexually motivated. Mullet's body was found clad only in a shirt, but there is no dispute that the attacker surprised Mullet after she had quickly emerged from the shower to answer the telephone. Mullet's body was not sexually mutilated.

On February 6, 1992, the trial court held that the other acts enumerated in the state's notice of intent to use evidence of January 23, 1991, and its amended notice of intent of January 28, 1991, were inadmissible pursuant to Evid R. 404(B) and 403(A). The court accepted proffered statements in lieu of testimony as a factual basis for the decision.

That decision was appealed and on June 24, 1992, the Third District Court of Appeals vacated the trial court's suppression order and remanded the case. The appellate court found that

the proffered statements, specifically those of the state's expert witness, Dr. Sandra B. McPherson, were insufficient to determine whether Lowe's other acts could be admissible pursuant to Evid. R. 404(B). McPherson's proffered statement had been offered to tie together the acts, the power list, and the murders. The appellate court found that proffer to be ambiguous and limited. The appellate court opined that "the trial court can more properly make a determination of the admissibility of the evidence in the context of the trial."

Lowe's right to a jury having been waived, trial on the case commenced on September 14, 1992. On the fifth day of trial, the other-acts evidentiary issue was argued again. The record upon which the trial court based its ruling included the evidence presented during the first four days of trial, the opening statements of counsel, the voir dire testimony of Mandy Orders, taken at a hearing on August 7, 1992, the deposition of Sandra McPherson, taken on September 9, 1992, and the testimony of FBI agent Douglas in a hearing before the trial court on March 15, 1991.

The trial court made several findings upon which it based its decision. Those included that Mullet was stabbed to death and that her hands were bound with a cloth and her feet with a clothesline-like rope, that there was no evidence of sexual conduct by the assailant, that Lowe authored the power list on which were listed the names of Mullet and the three young girls, that Lowe showed the girls sexual publications and X-rated videotapes and allowed them to make audiotapes of sexual phrases, that one game he played with the girls involved tying them up with a white rope, and that Lowe never touched the children so as to constitute "sexual conduct" or "sexual contact" as defined in R.C. 2907.01.

The trial court received a significant amount of evidence, and based upon the testimony of the state's expert that she could not give an expert opinion based on reasonable psychological certainty that the acts and the power list were linked to the crime in question, found that the evidence showing other acts was inadmissible pursuant to Evid. R. 404(B) and R.C. 2945.59.

The state took a midtrial appeal pursuant to Crim. R. 12(J), which allows an appeal as of right from the granting of a motion to suppress evidence when the prosecuting attorney certifies that "(1) the appeal is not taken for the purpose of delay; and (2) the granting of the motion has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed."

The appellate court affirmed the trial court's decision, stating that the trial court's ruling was "in accordance with authority and its attitude was not unreasonable, arbitrary or unconscionable, where the State has failed to establish by substantial proof some substantial link between the defendant's actions with the three minor girls, the 'power list,' and a motive, plan or scheme to commit the murders of Phyllis Mullet and Murray Griffin."

This cause is now before this court pursuant to this court's allowance of a motion to certify the record.

Gerald L. Heaton, Logan County Prosecuting Attorney, for appellant.
Dennis Day Lager and Marc S. Triplett, for appellee.

Pfeifer, J.   Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. State v. Broom (1988), 40 Ohio St. 3d 277, 282-283, 533 N.E.2d 682, 690-691; Evid. R. 404(B); R.C. 2945.59.  R.C. 2945.59 and Evid. R. 404(B) codify the common law with respect to evidence of other acts of wrongdoing, and are construed against admissibility. See State v. Burson (1974), 38 Ohio St. 2d 157, 67 O.O.2d 174, 311 N.E.2d 526; State v. Hector (1969), 19 Ohio St.2d 167, 174-175, 48 O.O.2d 199, 203-204, 249 N.E.2d 912, 916-917.

That there is substantial proof that Lowe engaged in questionable activities with the young girls is not disputed. The issue is whether those activities tend to prove any of the enumerated purposes of Evid. R. 404(B).

The state argues that Lowe's activities with the girls should be admitted into evidence in order to show identity. Identity is the least precise of the enumerated purposes of Evid. R. 404(B).  Evid R. 404(B) states that other acts are not admissible "to prove the character of a person in order to show that he acted in conformity therewith," and we therefore must be careful when considering evidence as proof of identity to recognize the distinction between evidence which shows that a defendant is the type of person who might commit a particular crime and evidence which shows that a defendant is the person who committed a particular crime.

Other acts can be evidence of identity in two types of situations.  First are those situations where other acts "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment," and which are "inextricably related to the alleged criminal act." State v. Curry (1975), 43 Ohio St.2d 66, 73, 72 O.O.2d 37, 41, 330 N.E.2d 720, 725-726.  For instance, if someone had seen Lowe trespassing on Mullet's property on the evening of the attack, or had seen him speeding away from the crime scene, or had found him trying to remove evidence from the crime scene, or had seen him threatening a witness, such evidence could be admitted to prove identity.  Such evidence would directly tie Lowe to the crime at issue.  The other acts the state seeks to introduce do not tie Lowe to the immediate background of, nor are they inextricably related to, the murders.  The other acts in this case are separate from the planning, carrying out, and aftermath of the crimes at issue.

Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged.  "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid. R. 404(B)." State v. Jamison (1990), 49 Ohio St. 3d 182, 552 N.E.2d 180, syllabus.  "'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the

charged offense." State v. Smith (1990), 49 Ohio St. 3d 137, 141, 551 N.E.2d 190, 194.  While we held in Jamison that "the other acts need not be the same as or similar to the crime charged," Jamison, syllabus, the acts should show a modus operandi identifiable with the defendant. State v. Hutton (1990), 53 Ohio St. 3d 36, 40, 559 N.E.2d 432, 438.

A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator.  Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character.  To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question.

In Jamison, supra, where the crime committed was a robbery-murder which took place in the midafternoon in downtown Cincinnati, this court allowed evidence of seven other robberies defendant had perpetrated over a four-month span near downtown Cincinnati.  The robberies, including the one at issue, had many similar qualities.  In Smith, supra, where defendant was charged with murder for administering an overdose of morphine to an overnight guest, this court allowed evidence that another overnight guest of defendant had been killed by an overdose of morphine.  In Broom, supra, defendant was charged with abducting and killing a fourteen-year-old girl.  This court ruled admissible evidence of defendant's two other attempted abductions which shared many of the characteristics of the one at issue.

Lowe's activities with the girls establish no modus operandi applicable to the Mullet and Griffin murders.  Lowe acted in a completely nonviolent manner with the girls.  All of the activities occurred at Lowe's home, when the children were entrusted to his care.  There was no stalking of the girls, no element of surprise, and no force.

Mullet's killer, on the other hand, took her by surprise in her own home.  The attack on her was brutally violent -- she was stabbed in the chest repeatedly and her throat was slashed.  There was no direct evidence that the attack was sexually motivated.

Lowe's other acts and the murders are not sufficiently related, nor do they share any significant common features. The state argues that the other acts and the murders were both grounded in sexual perversion, but evidence of the sexual nature of the murders was found insufficient by the trial court.  The only arguably common feature of the other acts and the murders is the use of rope -- Lowe sometimes tied the girls, and Mullet's feet were tied together with rope.  The use of rope itself does not provide a distinctive behavioral fingerprint.

The evidence at issue neither inextricably ties Lowe to the underlying crime nor establishes a modus operandi consistent with the murders.  Basically, the evidence shows that Lowe acted in an extraordinarily inappropriate, possibly criminal, manner with some very young girls.  That evidence may support a conviction for disseminating matter harmful to

juveniles, with which Lowe has also been charged.  That evidence, however, does not belong in this case.

In State v. Malinovsky (1991), 60 Ohio St. 3d 20, 573 N.E.2d 22, this court recognized the state's right to file midtrial appeals on evidentiary issues.  The standard of appellate review in these appeals is the same as that in post-trial appeals.  That is, "'[t]he trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.'" State v. Maurer (1984), 15 Ohio St. 3d 239, 265, 15 OBR 379, 401, 473 N.E.2d 768, 791, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130.  This court previously held that "[t]he term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St. 2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.  With that standard of review in mind, the appellate court in this case correctly affirmed the trial court.

The trial judge certainly did not abuse his discretion in this case.  The standard for admissibility of other-acts evidence is strict, and the evidence sought to be admitted here comes nowhere near that standard.  This murder has kept the surrounding community on edge for the last eight years.  In that crucible of emotion, the trial judge made the clearly correct ruling.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick and F.E. Sweeney, JJ., concur.