OPINION
{¶ 1} Harold Jay Hammond is appealing the judgment of the Montgomery County Court of Common Pleas, which convicted him of felonious assault with a deadly weapon.
 {¶ 2} In the early morning hours of December 26, 2001, Terry Daniel received a phone call that he testified was from Mr. Hammond. Mr. Daniel testified at trial that Mr. Hammond had stated that he had some money that he had previously agreed to give to Mr. Daniel. Mr. Daniel testified that Mr. Hammond had asked Mr. Daniel to meet him around the corner from Mr. Hammond's mother's home. Mr. Daniel stated that he had made contact with Mr. Hammond approximately fifteen to twenty minutes after the phone call. Mr. Daniel testified that he had parked his car and that Mr. Hammond had walked around the back end of Mr. Daniel's car and had approached the driver's door. Mr. Daniel further testified that, when Mr. Hammond had reached the driver's door, Mr. Daniel had rolled down the window and had said, "Hey, what's up?" Mr. Hammond responded, "What's up?," and reached forward as though he were going to hand something to Mr. Daniel. Mr. Daniel testified that, when he had reached forward toward Mr. Hammond, Mr. Hammond had stabbed him in the chest.
 {¶ 3} Mr. Daniel stated that he then had noticed that his chest was bleeding and had attempted to push Mr. Hammond's hand back out of the car window opening. Mr. Daniel also reached for the gearshift on the car in an attempt to drive the car away from Mr. Hammond. Mr. Daniel testified that Mr. Hammond had attempted to stop him from putting the car in gear and had cut Mr. Daniel's finger and thumb in the process. Eventually, Mr. Daniel was able to drive away from the scene. He drove to a friend's house, and the friend then drove him to Miami Valley Hospital. At the hospital, Mr. Daniel received stitches in his chest, finger, and thumb. Additionally, he remained at the hospital for eight hours because one of his lungs was damaged by the chest wound.
 {¶ 4} The police spoke with Mr. Daniel in the hospital, and he informed them that Mr. Hammond had stabbed him. The information about Mr. Hammond's involvement in the stabbing was broadcast over the police radio. Mr. Hammond was seen by Detective Pigman of the Trotwood Police Department walking northbound on Kiski. The detective pulled his car near Mr. Hammond and stated, "Hey, Jay, I need to talk to you." Mr. Hammond immediately started running away and yelling, "I didn't do it." The detective chased Mr. Hammond on foot and eventually arrested him. Mr. Hammond then stated that on the night in question, he had purchased some crack cocaine, which he had smoked in his garage. He denied ever having left his garage that evening. Mr. Hammond denied that he had stabbed Mr. Daniel. During a search incident to his arrest, a black-handled pocket knife was found on Mr. Hammond.
 {¶ 5} Mr. Hammond was indicted on January 18, 2002 on one count of felonious assault with a deadly weapon. In March of 2002, the matter proceeded to a jury trial. Shortly prior to trial, Mr. Hammond was granted a motion in limine to exclude the State from entering evidence that a knife was found on Mr. Hammond because no forensic evidence existed that the knife found on Mr. Hammond was the knife that was used to stab Mr. Daniel.
 {¶ 6} At trial, Mr. Daniel testified to his version of events, identifying Mr. Hammond as the person who had stabbed him. Additionally, Detective Pigman testified regarding his arrest of Mr. Hammond and the statements Mr. Hammond made during the arrest. Additionally, Detective Pigman was permitted to testify regarding the knife found on Mr. Hammond. Mr. Hammond was subsequently found guilty by the jury and sentenced to seven years of imprisonment. Mr. Hammond has filed this appeal from his conviction.
 {¶ 7} Mr. Hammond raises the following assignments of error:
 {¶ 8} "[1.] The Trial Committed Prejudicial Error By Entering A Finding Of Guilty Which Was Against The Manifest Weight Of The Evidence.
 {¶ 9} "[2.] It Was Plain And Reversible Error For The Trial Court Not To Declare A Mistrial Due To Prosecutorial Closing Arguments Inviting The Jury To Decide This Case On Matters Outside The Scope Of The Evidence.
 {¶ 10} "[3.] The Trial Court Committed Reversible Error By Permitting The Prosecutor To Inquire About A Knife (Weapon) After It Had Granted A Motion In Limine To Exclude It."
 Appellant's first assignment of error: {¶ 11} Mr. Hammond argues that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 12} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175.
 {¶ 13} The evidence presented at trial consisted primarily of Mr. Daniel's testimony that Mr. Hammond had called him and had asked him to meet him. Mr. Daniel further testified that, when Mr. Hammond had approached his car, he had reached in and stabbed him. The State's evidence further established that Mr. Daniel's stab wounds caused bleeding, required stitches, and damaged one of his lungs. Moreover, the State presented evidence that, when a detective approached him, Mr. Hammond immediately began running away, yelling, "I didn't do it."
 {¶ 14} Mr. Hammond points to inconsistencies between Mr. Daniel's testimony and statements he made to the police. Mr. Hammond argues that Mr. Daniel was not a credible witness. Having reviewed the testimony at trial, Mr. Daniel's version of events did not significantly differ from Officer Haines's testimony regarding Mr. Daniel's statements to the police. Upon review of the evidence before the jury, we cannot say that the jury clearly lost its way and committed a manifest miscarriage of justice. Mr. Hammond's conviction was not against the manifest weight of the evidence. Mr. Hammond's first assignment of error is without merit and is overruled.
 Appellant's second assignment of error: {¶ 15} Mr. Hammond argues that the trial court committed plain error in failing to declare a mistrial due to the prosecutor's comments during closing argument. We disagree.
 {¶ 16} When determining whether prejudicial error occurred in a prosecutor's closing argument, an appellate court must review the closing argument in its entirety. State v. Ballew, 76 Ohio St.3d 244, 255,1996-Ohio-81. Prosecutors are entitled to some latitude in closing argument as to what the evidence has shown and what inferences can be drawn therefrom. Id. In determining whether a prosecutor's comments amounted to prejudice, the focus must be on "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Hartman, 93 Ohio St.3d 274, 295,2001-Ohio-1580, quoting State v. Hessler, 90 Ohio St.3d 108,2000-Ohio-30. Both counsel for the State and the defense have wide latitude in responding to the arguments of opposing counsel. State v.Brown (1988), 38 Ohio St.3d 305, 317.
 {¶ 17} However, if no objection is made at trial to remarks by the prosecutor during closing argument, the defendant waives all but plain error. State v. Bey (1999), 85 Ohio St.3d 487, 494, 1999-Ohio-283. The Ohio Supreme Court has stated that notice of plain error should be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, 97.
 {¶ 18} During the closing argument, Mr. Hammond's counsel argued that the testimony of Mr. Daniel was insufficient to convict Mr. Hammond. Specifically, Mr. Hammond's counsel pointed to the fact that no one saw the stabbing occur and no one could corroborate Mr. Daniel's testimony. In response, the prosecutor stated:
 {¶ 19} "You know, defense attorney keeps insisting it's an outrage, an outrage that we would come to you with only the word of one of our fellow citizens. Well, that's right. `Cause if you call somebody up in the middle of the night, you bring them over to your house, and you stand in a dark place and then you stab them, then what you get to do is come into court and say, na-na-na-na-na-na, you don't have any evidence. Nobody saw it. That's absurd. It's absurd. It's absurd. It's wrong. We can't live in a world like that. Guess what? The law still believes that people can tell the truth. The law still believes that somebody can come into court and say, look, this is what happened to me."
 {¶ 20} Mr. Hammond argues that these comments made by the prosecutor during his closing argument disparage Mr. Hammond and defense counsel. We disagree. We find that the prosecutor's comments were permissible argument in response to defense counsel's attack on Mr. Daniel's credibility and assertion that Mr. Hammond should not be convicted absent physical evidence connecting him to the crime. We cannot say that the prosecutor's comments amounted to a manifest miscarriage of justice and therefore that plain error occurred. Mr. Hammond's second assignment of error is without merit and is overruled.
 Appellant's third assignment of error: {¶ 21} Mr. Hammond argues that the trial court committed reversible error in permitting testimony that a knife was found on Mr. Hammond's person after granting a motion in limine excluding such testimony. We disagree.
 {¶ 22} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Cassano,96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 45, quoting State v. Sage
(1987), 31 Ohio St.3d 173. Therefore, an appellate court reviews the trial court's decision to admit or exclude evidence on an abuse of discretion standard. Id. at ¶ 45. An abuse of discretion amounts to more than a mere error of law or judgment but implies that the court's judgment was unreasonable, arbitrary or unconscionable. State v. Lowe,69 Ohio St.3d 527, 532, 1994-Ohio-345.
 {¶ 23} Prior to trial, Mr. Hammond sought and obtained a motion in limine excluding the State from presenting evidence on a knife found on Mr. Hammond when he was arrested. Although the knife had been found on Mr. Hammond, no physical evidence was found on the knife connecting it to the stabbing of Mr. Daniel. During defense counsel's cross examination of Detective Pigman, the following exchange occurred:
 {¶ 24} "Q. Based on your interview with Mr. Hammond, did you find any evidence that indicated he had anything to do with this crime?
 {¶ 25} "A. Yes and no.
 {¶ 26} "Q. What did he tell you that indicated he committed this crime?
 {¶ 27} "A. It's not what he told us. It was an object that we found." (Tr. 117).
 {¶ 28} At this point, defense counsel objected to Detective Pigman's testimony at sidebar. The trial court reasoned that defense counsel's question had opened the door to Detective Pigman's response and that the detective had not mentioned the object was a knife. Therefore, the trial court overruled the objection. Rather than abandoning the issue, defense counsel then initiated the following series of questions with the detective.
 {¶ 29} "Q. Detective, you testified that you found an object that linked Mr. Hammond to the crime.
 {¶ 30} "A. It could have.
 {¶ 31} "Q. And you sent that object to be tested by the crime lab?
 {¶ 32} "A. Yes, I did.
 {¶ 33} "Q. And you had your evidence technician look at it to try to link Mr. Hammond to the crime?
 {¶ 34} "A. Our evidence technician did. And I sent it to the crime lab.
 {¶ 35} "Q. And they found nothing —
 {¶ 36} "A. They found —
 {¶ 37} "Q. — linked to the crime?
 {¶ 38} "A. No traces of it.
 {¶ 39} "Q. So there was nothing that links — any item that you found — Mr. Hammond to the crime, is there?
 {¶ 40} "A. No.
 {¶ 41} "Q. So I will ask you again whether you found any evidence that links Mr. Hammond to the crime, the answer is no?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. That's correct?
 {¶ 44} "A. Yes." (Tr. 119-120).
 {¶ 45} Defense counsel then rested his cross examination. Prior to the State beginning its redirect examination of the detective, the State asked for a conference. At sidebar, the State argued that, because defense counsel had elicited detailed testimony from the detective about the object and no forensic evidence connected this object to the stabbing, the State should be permitted to elicit that the object was a knife. The prosecutor argued that the jury may have become confused about the issues, specifically because of defense counsel's questions regarding whether any physical evidence was found on the object. Defense counsel argued that, because there was no physical evidence linking the knife to the crime, the knife was irrelevant and prejudicial and should be excluded.
 {¶ 46} The trial court reasoned that defense counsel had opened the door on the knife issue further by asking whether the object was sent to the lab for analysis and inquiring as to the results of the analysis. The trial court stated that defense counsel had suggested the object had some relevancy by asking about the analysis. Therefore, the trial court permitted the prosecutor to ask the single question of what the object was, to which the detective responded, "It was a black handled pocket knife that was found in [Mr. Hammond's] right front pants pocket." Defense counsel then recross-examined the detective and reiterated that no evidence had been found linking the knife to this crime.
 {¶ 47} Mr. Hammond argues that the trial court committed reversible error in permitting the above testimony despite the motion in limine. The State argues that it is inconsequential whether the trial court properly concluded that defense counsel opened the door as the motion in limine should not have been granted originally. We do not think it is necessary to address whether the trial court abused its discretion in granting the motion in limine. Having reviewed the questioning and the arguments to the trial court, we do not think the trial court abused its discretion in overruling defense counsel's objection when the detective first mentioned finding an object. Defense counsel's question was broad and could have been reasonably understood to ask what evidence linked Mr. Hammond to the crime. We do not find that the trial court abused its discretion in overruling the objection. Additionally, we cannot say that the trial court was unreasonable, arbitrary, or unconscionable in concluding that defense counsel's additional questioning of the detective regarding the analysis conducted on the object opened the door further and implied to the jury that the object was relevant. In light of defense counsel's specific questions regarding the object, we cannot say that the trial court abused its discretion in permitting the State to elicit testimony identifying the object. Mr. Hammond's third assignment of error is without merit and is overruled.
 {¶ 48} The judgment of the trial court is affirmed.
FAIN, P.J. and GRADY, J., concur.