DECISION.
{¶ 1} Following a jury trial, defendant-appellant Mallon Roberts was found guilty of the murder of Trenia Price. Roberts was sentenced to 15 years' to life imprisonment, along with ten years on a repeat-violent-offender specification, for an aggregate of 25 years' to life imprisonment.
 {¶ 2} Roberts has appealed, and in his sole assignment of error he argues that the trial court erred in allowing testimony concerning a prior rape that he had committed as proof of identity and method.
 Other-Acts Evidence {¶ 3} Both Evid.R. 404(B) and R.C. 2945.59 concern the admissibility of evidence of other acts committed by the defendant. Evid.R. 404(B) provides that "[e]vidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."[1] But such evidence is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[2]
 {¶ 4} And R.C. 2945.59 similarly provides that when "the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show * * * [these facts] may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."[3] *Page 3 
 {¶ 5} When the identity of a defendant is at issue, evidence of other acts may be used to establish a particular modus operandi of the defendant.[4] But to be admissible for such a purpose, the "other acts evidence must be related to and share common features with the crime in question."[5] When both the charged offense and the other-acts evidence share a unique and identifiable plan or pattern, they provide a behavioral fingerprint that may be used to identify the defendant as the perpetrator.[6]
 {¶ 6} While the other act must be similar to the crime in question, it need not be identical. Differences between the other-acts evidence and evidence relating to the charged offense "go to the weight of the evidence, not its admissibility."[7] We review the trial court's admission of other-acts evidence for an abuse of discretion.[8]
 The Murder of Trenia Price {¶ 7} As we have stated, Roberts was found guilty of the murder of Trenia Price. Deputy Chief Medical Examiner Robert Pfalzgraf testified, in a video deposition, that he had conducted an autopsy on Price's body. Price had suffered numerous stab and slash wounds to her body, predominately on and around her neck. Price's voice box, also known as her thyroid cartilage, had been fractured into multiple pieces, and she had suffered petechial hemorrhages in her eyeballs. The latter injuries were most likely caused by strangulation. Additionally, one of Price's upper incisors had been knocked out of her mouth and was found inside her oral cavity during the autopsy. *Page 4 
 {¶ 8} Dante Thompson testified that Price had been living in an apartment belonging to Thompson's aunt. Thompson frequented the apartment and used it to store his supply of marijuana that he sold on the street. Thompson testified that, on September 5, 2003, he had entered the apartment and found Price's dead body on the bathroom floor. Thompson observed that the apartment door had been shut, but not locked. Thompson further testified that he had previously seen Roberts, whom he did not know by name but identified from a photographic lineup, inside Price's apartment, smoking some type of drug with her.
 {¶ 9} Criminalist Ronald Camden testified that several of Price's hair extensions had been ripped out of her head and were found next to her body. Camden observed numerous jagged cuts on Price's body. He was unable to find a knife in the apartment that was capable of making such a cut, but testified that a knife was missing from a block in the kitchen. Forensic scientist William Harry testified that he had conducted deoxyribonucleic acid, or "DNA," testing on numerous items found in Price's apartment. Roberts' DNA was present on both a jacket and a glass smoking device, also referred to in the record as a crack pipe.
 The Rape of Frances Green {¶ 10} The trial court permitted the state to present the videotaped deposition of Frances Green. Green provided the "other acts" evidence that is at issue in this appeal.
 {¶ 11} Green testified that she had been raped by Roberts in 1980. Green had been casually acquainted with Roberts before the rape. On the evening of September 17, 1980, Roberts twice came to Green's home to discuss the planning of a surprise birthday party for one of Green's neighbors. Because she had met him before *Page 5 
socially, Green voluntarily invited Roberts into her home. Green had been preparing food in the kitchen, with the assistance of a steak knife, during Roberts' second visit.
 {¶ 12} As she was speaking to Roberts, Green put the steak knife down. Roberts grabbed the knife and held it against her throat. Roberts held on to Green by the hair on her head as he forced her into one of the bedrooms in her home. Roberts ordered Green to take off her clothes, and when she hesitated, he punched her in the face. Roberts proceeded to rape Green. He next ordered her to perform oral sex, and as she attempted to comply, Roberts forcefully pulled on Green's hair, causing her physical pain. After a violent struggle, during which Roberts repeatedly struck Green in the head, she was able to escape.
 No Abuse of Discretion {¶ 13} Because of the common features present in both the murder of Price and the rape of Green, we conclude that the trial court did not abuse its discretion in admitting the other-acts evidence.
 {¶ 14} The evidence presented at trial demonstrated that Roberts had known both Green and Price prior to his attacks on them. Green had voluntarily allowed Roberts into her home, and the jury could reasonably have inferred that Price had done so as well. The evidence also demonstrated that Roberts had violently attacked both women by striking them in the face and severely pulling on their hair. Further, just as Roberts had initially threatened Green with her kitchen knife, Price was stabbed numerous times, and a knife from her kitchen could not be located.
 {¶ 15} Also relevant to our analysis is temporality. We first note that "[w]hile temporality is a fact to be considered[,] * * * [it] is not the primary determinative of the relevancy of `other acts' evidence."[9] But we find it extremely significant that, *Page 6 
although Roberts attacked Green in 1980, he was not released from prison until 2000. And given that Price was murdered in the fall of 2003, Roberts had been out of prison for less than four years before committing this crime.
 {¶ 16} Although the circumstances surrounding Roberts' rape of Green were not identical to the circumstances involved in the charged offense, they did contain similarities that were relevant in establishing Roberts' modus operandi and in identifying him as the perpetrator of the charged offense. Because the trial court did not abuse its discretion in allowing the other-acts evidence, Roberts' assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PAINTER, P.J., and SUNDERMANN, J., concur.
[1] Evid.R. 404(B).
[2] Id.
[3] R.C. 2945.59.
[4] State v. Bey, 85 Ohio St.3d 487, 490, 1999-Ohio-283,709 N.E.2d 484.
[5] Id., citing State v. Lowe, 69 Ohio St.3d 527, 1994-Ohio-345,634 N.E.2d 616, paragraph one of the syllabus.
[6] State v. Lowe, 69 Ohio St.3d 527, 531, 1994-Ohio-345,634 N.E.2d 616.
[7] State v. Knight (1998), 131 Ohio App.3d 349, 353,722 N.E.2d 568.
[8] See State v. Bey, supra, 85 Ohio St.3d at 490.
[9] State v. Love (June 4, 1997), 1st Dist. No. C-960498. *Page 1