OPINION
{¶ 1} Defendant-appellant, Ronald Brooks (Brooks), appeals his conviction in the Mahoning County Common Pleas Court for gross sexual imposition and rape. Brooks alleges the following on appeal: the trial court abused its discretion in failing to order a mistrial; the admission of "other acts" witnesses was prejudicial to his defense; and the trial court erred in instructing the jury on "other acts" testimony presented.
 {¶ 2} In March 2005, a Mahoning County grand jury indicted Brooks on twenty-five different counts of gross sexual imposition and rape. Count one, having weapons while under disability was dealt with separately and was not a part of this matter. Counts two through five were for the gross sexual imposition of J.F., Brooks's granddaughter, between January 1, 2000 and December 31, 2003, in violation of R.C. 2907.05(A)(4)(B), third-degree felonies. Counts six through twelve were for the rape of S.B.P., the biological daughter of Brooks with fourth wife Ernestine Brooks (Ernestine), between May 20, 1982 and May 19, 1988, in violation of R.C. 2907.02(A)(1)(b)(B), felonies punishable by life imprisonment. Counts thirteen through twenty-three were for the rape of S.B.P. between May 20, 1988 and December 31, 1998, in violation of R.C. 2907.02(A)(2)(B), first degree felonies. Count twenty-four was for the rape of S.B., the biological daughter of Brooks with third wife, Geraldine, on or about July 14, 1997, in violation of R.C. 2907.02(A)(2)(B), a first degree felony. Count twenty-five was for the rape of S.B. between April 7, 1994 and April 6, 1995, in violation of R.C. 2907.02(A)(1)(b)(B), a felony punishable by life imprisonment.
 {¶ 3} The matter proceeded to trial on October 18, 2006, after a mistrial had been granted several days prior. Grounds for the mistrial are not included in the record. Testimony began with J.F., who testified that Brooks began touching her "private parts" when she was five or six years old. (Tr. 252-253.) J.F. testified that the abuse usually occurred in the basement of the LaClede residence while her grandmother Ernestine was upstairs in the kitchen or bedroom, however it also occurred when she slept on the couch. (Tr. 251, 253, 263.) She explained in detail *Page 2 
that Brooks also "made her touch his private part," and that Brooks told her to remove her clothes at times. (Tr. 254-257.) She also testified that Brooks showed her pornographic magazines, kept in a desk drawer in the basement, almost every time he wanted to touch her. (Tr. 258-260.) She explained that when she and her cousin slept over at Brooks's house, he instructed the girls to kiss one another while he watched. (Tr. 265-268.) J.F. said that although Brooks never instructed her not to tell, she didn't tell her mother or the police immediately because she was scared and thought the abuse would be her fault. (Tr. 261.)
 {¶ 4} Next, S.B.P. testified to approximately eighteen years of abuse by Brooks, starting when she was about seven years old. S.B.P. offered detailed accounts of abuse involving oral sex when she was between seven and twelve years old, and then vaginal intercourse, in addition to oral sex, from the ages of twelve to twenty-three years old. (Tr. 283-285, 287-291.) S.B.P. testified that she told her mother about the abuse shortly after it began, but nothing came of this. (Tr. 284-286.) As a result of this, Brooks threatened to kill her if she ever told anyone else of the abuse. (Tr. 284.) S.B.P. testified at length that she feared her dad as a result of this, and because he "whooped" her and her other siblings whenever they upset him or failed to follow his house rules. (Tr. 286-288, 294-296.) Brooks also hit S.B.P.'s mother, Ernestine, "a lot." (Tr. 295.) S.B.P. described in detail Brooks's "expensive porn collection," the location of these items in the house, and how Brooks used these items to abuse her. (Tr. 302-303, 308, 312-313.) S.B.P. was subjected to a ritual of daily abuse and a life of isolation from friends. (Tr. 311-312, 319-320.) She also testified to scars and discoloration on Brooks's penis. (Tr. 318-319.) S.B.P. testified that the reason she decided to report her father's abuse is because she learned that he also abused J.F. (Tr. 322.)
 {¶ 5} S.B. also testified against Brooks. She also testified to receiving "whoopings" as a young girl, and that inappropriate touching began around age nine or ten. (Tr. 342-343.) S.B. said that at age twelve Brooks asked her questions regarding whether she had a boyfriend, and then raped her. (Tr. 344-345.) She said *Page 3 
that Brooks instructed her not to tell anyone, and that she did not because she was scared. (Tr. 345.) S.B. testified that Brooks raped her again at age fifteen, and again instructed her not to tell anyone. (Tr. 348-351.) S.B. also described the "scars or bumps" on Brooks's penis. (Tr. 351.) She described Brooks's pornographic materials, and the location of these items in the house. (Tr. 357.) S.B. eventually told her mother Geraldine of the abuse, who reported it to Children Services. (Tr. 355.) She made a police report, but did not know whether the allegations were ever investigated. (Tr. 356.)
 {¶ 6} Several other witnesses also testified. Brooks's wife Ernestine described the family makeup and Brooks's "physically and mentally abusive" behavior. (Tr. 379.) C.F., Brooks's stepson, testified to the types of discipline Brooks used. (Tr. 422-427.) Three "other acts" witnesses also testified as discussed below. Detective Charles Emery of the Mahoning County Sheriff's Department testified regarding his search of Brooks's home, as well as the interview he conducted with Brooks. Detective Emery testified that he located a green desk in the basement that held "numerous" pornographic magazines, including those depicting incest. (Tr. 499-500.) He also testified to finding other pornographic materials in specific locations within Brooks's home. (Tr. 503.) Finally, Brooks himself testified.
 {¶ 7} After deliberating, the jury returned a guilty verdict on all twenty-four counts against Brooks. The trial court sentenced him as follows: counts two through five, five years incarceration for each count, to be served consecutively; counts six through twelve, life in prison with parole eligibility after fifteen years for each count; counts thirteen through twenty, five to twenty-five years for each count; counts twenty-one through twenty-three, ten years for each count; count twenty-four, ten years incarceration; and count twenty-five, life in prison with parole eligibility after fifteen years. The trial court also designated Brooks a sexual predator pursuant to R.C. 2950.04.
 {¶ 8} Brooks's first assignment of error states:
 {¶ 9} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENSE *Page 4 
MOTION FOR A MISTRIAL MADE ON OR ABOUT THE BEGINNING OF THE THIRD DAY OF TRIAL."
 {¶ 10} Brooks complains that the trial court erred in not granting a mistrial when it permitted the state to ask leading questions of the victim-witnesses on direct examination. Brooks argues that during trial he posed "continuing objections" to these leading questions. Brooks also asserts that the trial court allowed the state to continuously use leading questions because the trial was delayed once by the court's decision to grant a mistrial several days prior. Further, he asserts that the state's use of leading questions "distorted" the victim-witnesses' testimonies and affected the ultimate outcome of the trial in that the jury was prejudiced. Notably, Brooks cites to no specific instance where the state improperly asked leading questions.
 {¶ 11} The decision to grant or deny a mistrial rests with the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Crim. R. 33; State v. Sage (1997), 31 Ohio St.3d 173,182, 31 OBR 375, 510 N.E.2d 343. An abuse of discretion, "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 12} Granting a mistrial is an extreme remedy only warranted in circumstances where a fair trial is no longer possible and it is required to meet the ends of justice. State v. Jones (1992),83 Ohio App.3d 723, 737, 615 N.E.2d 713. Mistrial is not properly granted, "merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected." State v. Lukens (1990), 66 Ohio App.3d 794, 809,586 N.E.2d 1099.
 {¶ 13} Evid. R. 611(C) provides leading questions cannot be used on direct examination of a witness "except as may be necessary to develop his testimony." This exception "is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." State v. Lewis (1982),4 Ohio App.3d 275, 278, 4 OBR 494, 448 N.E.2d 487. *Page 5 
 {¶ 14} The transcript reveals several instances where the state asked leading questions on direct examination of the victim-witnesses. (Tr. 254, 295, 307, 320, 321, 353, 354, 355, 357.) In most of these instances, defense counsel entered an objection that was sustained by the trial court. (Tr. 295, 307, 320, 355, 357.) In other instances, the trial court noted the objection or ordered the state to "put another question." (Tr. 295, 353.) Thus, the trial court did not allow the state to continually ask leading questions of its own witnesses as Brooks contends in his assignment of error. When violations did occur, the court typically ruled in Brooks's favor. Evid. R. 103 indicates error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Thus, Brooks suffered no prejudice as a result of the state's asking leading questions to which an objection was made and sustained. See State v.Joseph (Dec. 23, 1993), 3rd Dist. No. 1-91-11.
 {¶ 15} Further, in its response to Brooks's motion for a mistrial, the state clarified the purpose of the leading questions that it had posed. The state asserted that the sole leading question that was asked of J.F. was due to her age. (Tr. 404.) The state argued that since J.F. is a child witness, leading questions are sometimes necessary to develop the child's testimony. (Tr. 404.) The state also asserted that some leading questions were necessary to retain chronological order during direct examination of S.B.P. because of the length and breadth of her testimony. (Tr. 405.) After reminding the state that they had other options, such as requesting a witness to be treated as a hostile witness, the trial court warned the state that they would not be granted any further leeway and to proceed carefully. (Tr. 405-406.) After hearing both arguments, the trial court then overruled defense counsel's motion for a mistrial. (Tr. 406.)
 {¶ 16} "It is within the trial court's discretion to determine what, if any, remedial measures should be employed to correct violations of the evidence rules." Joseph, supra. A trial court does not err by determining "no cautionary instruction was necessary, by declining to strike testimony or by refusing to grant a mistrial." Id. Here, *Page 6 
the trial court specifically instructed the jury at the beginning and end of trial, in part, that the jury "must not speculate as to why the Court sustained an objection to any question or what the answer to such question may have been. [The jury] must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered." (Tr. 230, 630.)
 {¶ 17} The abundance of testimony by all victims, as well as other witnesses and Brooks himself, precludes the notion that the trial court denied Brooks a fair trial. Further, the trial court took necessary steps to instruct the jury, and also sustained Brooks's objections where appropriate.
 {¶ 18} Thus, for the foregoing reasons, Brooks's first assignment of error is without merit.
 {¶ 19} Because the second and third assignments of error are interrelated, they will be considered together. They state, respectively:
 {¶ 20} "THE TRIAL COURT ERRED IN ADMITTING `OTHER ACTS' TESTIMONY DURING TRIAL OVER THE DEFENDANT'S OBJECTIONS."
 {¶ 21} "THE TRIAL COURT ERRED IN NOT ADEQUATELY INSTRUCTING THE JURY IN THE SCOPE AND PERMITTED USE OF SAID `OTHER ACTS' TESTIMONY."
 {¶ 22} Brooks argues that the admission of "other acts" witnesses prejudiced his defense because "the `other acts' witnesses were unsure of times and dates and places that these acts were alleged to have taken place and therefore were unreliable * * *."
 {¶ 23} In reviewing a trial court's decision to admit or exclude evidence, an appellate court must limit its review to whether the trial court abused its discretion. State v. Bey, 85 Ohio St.3d 487, 490,1999-Ohio-283, 709 N.E.2d 484. Based upon an abuse of discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court on evidentiary issues.State v. Jenkins (1984), 15 Ohio St.3d 164, 222, 15 OBR 311,473 N.E.2d 264.
 {¶ 24} "Under Evid. R. 404(B), `[e]vidence of other crimes, wrongs, or acts is *Page 7 
not admissible to prove' a defendant's criminal propensity. `Other acts' evidence is admissible, however, if `(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' * * * Identity can be proven by establishing a modus operandi applicable to the crime with which a defendant has been charged. But in order `[t]o be admissible to prove identity through a certain modus operandi, other acts evidence must be related to and share common features with the crime in question.'" Bey, 85 Ohio St.3d at 490-491, 1999-Ohio-283,709 N.E.2d 484.
 {¶ 25} Before hearing the testimony of the three other acts witnesses, the court instructed the jury regarding the other act evidence, as follows:
 {¶ 26} "Evidence was received about the commission of acts other than the offenses with which the defendant is charged in this trial. This evidence was received only for a limited purpose. It is not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in accordance with that character.
 {¶ 27} "If you find that the evidence of other acts is true and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves * * * the absence of mistake, the defendant's motive, opportunity, intent or purpose, preparation, plan to commit the offense charged in this trial, and the identity of the person who committed the offense in this trial.
 {¶ 28} "Keep that instruction in mind when you hear the testimony for the next three witnesses." (Tr. 433-434.)
 {¶ 29} When limiting instructions are given to a jury regarding other acts evidence absent evidence to the contrary, a reviewing court must presume that the jury followed these instructions. Bey,85 Ohio St.3d at 491, 1999-Ohio-283, 709 N.E.2d 484. Thus, contrary to Brooks's argument under his third assignment of error, we find that the instruction was not so unclear as to mislead the jury or confuse it as to which testimony it referred, as the trial court clearly specified which testimony was *Page 8 
to be of limited application. See State v. Ditzler (March 28, 2001), 9th Dist. No. 00CA007604.
 {¶ 30} Accordingly, Brooks's third assignment of error is without merit.
 {¶ 31} In his brief, Brooks fails to elaborate on his assertion that the other acts witness testimony was distinctly prejudicial other than to say that these witnesses were unsure of times, dates, and places that Brooks's allegedly abused them.
 {¶ 32} The first witness' testimony with whom Brooks finds fault is B.C., who identified herself as Brooks's cousin. B.C. testified that she stayed at Brooks's house in 1990, at approximately age fourteen. (Tr. 437.) B.C. testified that Brooks asked her whether she had ever been with a boy, "took his penis and rubbed it around [her] vagina," and told her that "this is our secret." (Tr. 438-440.) B.C. testified to the appearance of Brooks's penis, stating that "[i]t was bumpy and different pigment, like discolored." (Tr. 440.)
 {¶ 33} Next, S.L.B. testified that Brooks is married to her mother, Ernestine Brooks, and that beginning around 1974 at age eight Brooks forced both S.L.B. and her sister A.S. to perform "oral stuff to him" in different locations such as his car or his home on Broadway in Youngstown. (Tr. 448-453.) S.L.B. also testified that Brooks told them not to tell anyone about the numerous incidents that occurred. (Tr. 453.)
 {¶ 34} Finally, A.S. testified that Brooks is married to her mother, Ernestine Brooks, and that Brooks subjected her to "sexual molestation." (Tr. 469-470.) A.S. testified that she first came into contact with Brooks at approximately five or six years old, and that he abused her until she was eight or nine years old. (Tr. 469, 476.) A.S. described in detail that Brooks typically instructed her to perform oral sex on him in his car or in his home on Broadway in Youngstown. (Tr. 470-476.) She also explained that both she and her sister S.L.B. were typically together during these incidents, and that Brooks usually instructed them to touch one another as well as perform sexual acts on him. Id. A.S. testified that Brooks instructed her not to tell anyone about the abuse. (Tr. 476-477.)
 {¶ 35} Taken together, the facts and circumstances surrounding the admission *Page 9 
of other acts evidence to prove Brooks operated with a plan did not amount to an abuse of discretion by the trial court. The other acts testimony with which Brooks takes issue established that Brooks used a certain modus operandi in carrying out his abuse, and illustrated unique identifying characteristics of Brooks as the perpetrator, thus collaborating testimony given by J.F., S.B.P., and S.B. pursuant to Evid. R. 404(B). Brooks's argument that the witnesses were unreliable in their accounts of times, dates, and places also fails. Specific times, dates, and places are not factors that Evid. R. 404(B) requires in consideration of a defendant's motive, opportunity, intent, purpose, etc. Further, it is evident from the record that each other acts witness was able to accurately recall time periods and details about locations of abuse with specificity.
 {¶ 36} In State v. McAdory, 9th Dist. No., 2004-Ohio-1234, the appellant appealed his rape conviction based in part on the state's use of other acts evidence to prove his identity through a modus operandi. The Ninth District held that "[o]ther acts evidence, in order to prove identity through a modus operandi, must be related to and share common features with the offense at issue." Id. at ¶ 18, citing State v.Lowe, 69 Ohio St.3d 530, 531, 1994-Ohio-345, 634 N.E.2d 616. "When such evidence establishes an idiosyncratic pattern of criminal conduct, it is not necessary for the offense at issue to be near in time and place to the other acts introduced into evidence; `the probative value of such conduct lies in its peculiar character rather than its proximity to the event at issue.'" McAdory at ¶ 18, quoting State v. DePina (1984),21 Ohio App.3d 91, 92, 21 OBR 97, 486 N.E.2d 1155; see, also, State v.Lillie (Apr. 22, 1992), 9th Dist. No. 15359. Thus, temporal issues are not solely determinative in consideration of other acts evidence.
 {¶ 37} In State v. Jackson (1948), 82 Ohio App. 318, 38 O.O. 23,81 N.E.2d 546, the defendant appealed his conviction on two counts of incest involving one of his daughters. He claimed the trial court erred in allowing two other daughters to testify about his prior sexual conduct with them. Id. at 321. The Jackson court affirmed the defendant's conviction, concluding that the defendant's different acts of *Page 10 
incest are "so related to the offense for which the defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive." (Emphasis added.) Id. at 323. The court explained, "[t]he [other acts] evidence is * * * for the sole purpose of showing a passion, an emotion, a degeneracy, of exactly the same type promptingthe commission of the offense laid in the indictment." (Emphasis added.) Id. at 322, citing Brown v. State (1875), 26 Ohio St. 176.
 {¶ 38} Finally, prior to trial, the trial court considered the issues raised in Brooks's motion to dismiss at a hearing on the state's motion to introduce other acts, and then made a decision to allow the evidence. The trial court once again denied Brooks's motion objecting to evidence of other acts during trial. (Tr. 225.) Further, the trial court sought to minimize any undue prejudice the evidence may have caused Brooks by instructing the jury that the evidence was received only for the limited purposes enumerated in Evid. R. 404(B), and that the evidence could not be considered for any other purpose. (Tr. 433-434.)
 {¶ 39} Accordingly, Brooks's second assignment of error is without merit.
 {¶ 40} Thus, the decision of the trial court is hereby affirmed.
 Vukovich, J., concurs. DeGenaro, P.J., concurs. *Page 1